# MUTUAL LIFE INSURANCE COMPANY *v.* HILL.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 166.   Argued March 1, 2, 1904.—Decided April 4, 1904.

A judgment of reversal is not necessarily an adjudication by the appellate court of any other than the questions in terms discussed and decided.

The following propositions have been established by prior decisions of this court in regard to the construction of policies of life insurance issued in other States by New York companies:

1. The State where the application is made, the first premium paid by and the policy delivered to the assured, is the place of contract.

2. The statutory provision of the State of New York in reference to forfeitures has no extra-territorial effect, and does not of itself apply to contracts made by a New York company outside of the State.

3. Parties contracting outside of a State may by agreement incorporate into the contract the laws of that State and make its provisions controlling on both parties, provided such provisions do not conflict with the law or public policy of the State in which the contract is made.

Where a contract contains a stipulation that it shall be construed to have been made in New York without referring to the law of that State requiring notice, and also contains another stipulation by which the assured expressly waives all further notice required by any statute, the latter stipulation is paramount and to that extent limits the applicability of the New York law in reference to notice to policy holders.

ON April 28, 1886, George D. Hill, at Seattle, Washington, signed a written application to the Mutual Life Insurance Company of New York (hereinafter called the insurance company) for a policy of $20,000. The application was forwarded to the home office. The insurance company accepted the application, executed a policy and forwarded it to its local agent at Seattle, who there, on June 12, 1886, received the first premium and delivered the policy to Hill. The beneficiary named in the policy was Ellen K. Hill, the wife of the applicant. She died on February 14, 1887, leaving four children, the present defendants in error. A premium receipt for the second annual premium was in 1887 forwarded to the local agent

at Seattle, presented by him to Hill, and not paid. No subsequent premiums were paid, and on December 4, 1890, Hill died.

Thereafter this action was commenced in the Circuit Court of the United States for the District of Washington. The contention of the plaintiffs is that, although the annual premiums for 1887, 1888, 1889 and 1890 had not been paid, the insurance company was nevertheless indebted to them for the full·amount of the policy and interest, by reason of the fact that it had failed to give the notice of forfeiture prescribed by chapter 341, Laws, 1876, as amended by chapter 321, Laws, 1877, of the State of New York. The complaint set out a copy of the policy, alleged the payment of the first annual premium, the death of the insured and the relationship of the plaintiffs to the beneficiary. The defendant relied upon the non-payment of the premiums other than the first, and an abandonment of the contract. A demurrer to these defences was sustained and a judgment entered for the plaintiffs, which was affirmed by the Court of Appeals for the Ninth Circuit. 97 Fed. Rep. 263; 38 C. C. A. 159. A writ of certiorari was issued by this court, 176 U. S. 683, the judgment reversed and the case remanded for further proceedings. 178 U. S. 347. An amended answer and a replication were then filed by leave of the Circuit Court. A trial was had before the court and a jury, which resulted in a verdict and judgment for the plaintiffs. This judgment was affirmed by the Court of Appeals, 118 Fed. Rep. 708; 55 C. C. A. 536, and the case was again brought here on certiorari. 188 U. S. 742.

*Mr. Julien T. Davies,* with whom *Mr. Edward Lyman Short, Mr. E. C. Hughes* and *Mr. F. D. McKenney* were on the brief, for plaintiff in error.

*Mr. George Turner* and *Mr. S. Warburton,* with whom *Mr. Eben Smith* and *Mr. Harold Preston* were on the brief, for defendant in error.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

A preliminary matter is this: When the case was here before we held that upon the record there was disclosed an abandonment of the insurance contract, by both the insured and the beneficiaries, and on that ground the judgment was reversed. It is now contended that "the only question left open by the mandate of this court was a submission of this question;" that our decision was substantially an adjudication that the plaintiffs had a right to recover unless it was shown that there had been an abandonment of the insurance contract, and that upon this trial it was shown that there had been no such abandonment, the insured having always expressed a wish to continue the policy, the beneficiary named in the policy having died before the second premium became due, and her children, who became entitled thereafter as beneficiaries, being minors and in actual ignorance of its existence. That decision was based upon the averments of the pleadings, and these pleadings were amended after the judgment was reversed and the case returned to the trial court. Clearly the contention of the plaintiffs is not sustainable. When a case is presented to an appellate court it is not obliged to consider and decide all the questions then suggested or which may be supposed likely to arise in the further progress of the litigation. If it finds that in one respect an error has been committed so substantial as to require a reversal of the judgment, it may order a reversal without entering into any inquiry or determination of other questions. While undoubtedly an affirmance of a judgment is to be considered an adjudication by the appellate court that none of the claims of error are well founded—even though all are not specifically referred to in the opinion—yet no such conclusion follows in case of a reversal. It is impossible to foretell what shape the second trial may take or what questions may then be presented. Hence the rule is that a judgment of reversal is not necessarily an adjudication by the appellate

court of any other than the questions in terms discussed and
decided. An actual decision of any question settles the law
in respect thereto for future action in the case. Here, after
one judgment on the pleadings had been set aside, on amended
pleadings a trial was had, quite a volume of testimony pre-
sented and a second judgment entered. That judgment is
now before us for review, and all questions which appear upon
the record and have not already been decided are open for con-
sideration.

Previous decisions in kindred cases have established these
propositions: First, the State of Washington was the place of
the contract. *Equitable Life Assurance Society* v. *Clements,*
140 U. S. 226, 232; *Mutual Life Insurance Company of New
York* v. *Cohen,* 179 U. S. 262. Second, the statutory provision
of the State of New York in reference to forfeitures has no
extra-territorial effect, and does not of itself apply to con-
tracts made by a New York company outside of that State.
*Mutual Life Insurance Company of New York* v. *Cohen, supra.*
Third, parties contracting outside of the State of New York
may by agreement incorporate into the contract the laws of
that State and make its provisions controlling upon both
parties, provided such provisions do not conflict with the law
or public policy of the State in which the contract is made.
*Equitable Life Assurance Society* v. *Clements, supra; Mutual
Life Insurance Company of New York* v. *Cohen, supra.* If it
were necessary, other cases from this and state courts might
be cited in support of these propositions. Applying them, it
follows that, as Washington was the place of the contract, the
laws of that State control its terms and obligations, unless the
parties thereto have stipulated for some other laws. Such a
stipulation, it is insisted, is found in this contract. In deter-
mining the effect of such a stipulation it must be borne in
mind that the applicability of other laws than those of the
State of the place of contract is a matter of agreement, and
that the agreement may select laws and also limit the extent
of their applicability. The case is precisely like one in which

the parties, without mentioning laws or State, stipulate that
the contract shall be determined in accordance with certain
specified rules.

This insurance policy contains these recitals:

"In consideration of the application for this policy, which
is hereby made a part of this contract, the Mutual Life Insur-
ance Company of New York promises to pay at its home office
in the city of New York, unto Ellen Kellogg Hill, wife of
George Dana Hill, of Seattle, in the county of King, Washing-
ton Territory, for her sole use, if living, in conformity with the
statute, and if not living, to such of the children of their bodies
as shall be living at the death of the said wife, or to their
guardian for their use, twenty thousand dollars; upon ac-
ceptance of satisfactory proofs at its said office, of the death
of the said George Dana Hill during the continuance of this
policy, upon the following condition; and subject to the pro-
visions, requirements, and benefits stated on the back of this
policy, which are hereby referred to and made part thereof;

"The annual premium of eight hundred and fourteen dollars
and —— cents shall be paid in advance on the delivery of this
policy, and thereafter to the company at its home office in the
city of New York, on the twenty-ninth day of April in every
year during the continuance of this contract.

    *     *     *     *     *     *     *     *

"Payment of premiums.—Each premium is due and payable
at the home office of the company in the city of New York; but
will be accepted elsewhere when duly made in exchange for the
company's receipt, signed by the president or secretary.  No-
tice that each and every such payment is due at the date named
in the policy, is given and accepted by the delivery and accept-
ance of this policy, and any further notice required by any
statute is hereby expressly waived.

    *     *     *     *     *     *     *     *

"Paid-up policy.—After three full annual premiums have
been paid upon this policy, the company will, upon the legal
surrender thereof before default in payment of any premium,

or within six months thereafter, issue a paid-up policy, payable as herein provided for the amount required by the provisions of the act of May 21, 1879, chap. 347, Laws of the State of New York."

In the application are these provisions:

"If said policy be issued, the declarations, agreements, and warranties herein contained shall be a part thereof; and the contract of insurance when made shall be held and construed at all times and places to have been made in the city of New York.

\*    \*    \*    \*    \*    \*    \*    \*

"4th. Policyholders must not expect to be notified when their premiums will be due. It is a practice of the company to send these notices, as reminders when the address is known, but no responsibility is assumed on the part of the company in consequence of their non-reception."

The statute of New York, relied upon as controlling, forbids the forfeiture of any life insurance policy unless "a written or printed notice stating the amount of such premium or interest due on such policy, the place where said premium or interest should be paid; and the person to whom the same is payable, shall be duly addressed and mailed to the person whose life is assured, or the assignee of the policy, if notice of the assignment has been given to the company, at his or her last known post office address, postage paid by the company, or by an agent of such company or person appointed by it to collect such premium. Such notice shall further state that unless the said premium or interest then due shall be paid to the company or to a duly appointed agent or other person authorized to collect such premium within thirty days after the mailing of such notice, the said policy and all payments thereon will become forfeited and void."

Now to what extent were the statutes of New York made by these stipulations controlling? It is stated in the application that the contract of insurance is to "be held and construed at all times and places to have been made in the city of New

York." It might with some plausibility be contended that this general provision is limited to the matter which precedes it in the same sentence, to wit, the "declarations, agreements and warranties herein contained." This contention is reinforced by the fact that elsewhere in the contract there is special mention of one statute of New York, to wit, chap. 347, Laws, 1879, which is made controlling in reference to a single matter.

But assuming that the general declaration that the contract is to be held and construed to have been made in the city of New York, would, if there was nothing else, make controlling all the applicable statutes of that State, it is limited by other express agreements of the policy. Among these are that "notice that each and every such payment is due at the date named in the policy is given and accepted by the delivery and acceptance of this policy, and any further notice required by any statute is thereby expressly waived," and also that "policyholders must not expect to be notified when their premiums will be due. It is a practice of the company to send these notices, as reminders when the address is known, but no responsibility is assumed on the part of the company in consequence of their non-reception." Language could not be clearer to the effect that the party accepting the policy admits thereby the receipt of every notice in respect to the payment of premium which can be implied from any other part of the policy or required by any statute. The contention is that this express stipulation in reference to notice is nullified by the general provision that the contract is to be construed to have been made in the city of New York. It is urged that the laws of New York control in the construction of any contract made in that State, that they require notice as a condition of forfeiture and forbid a waiver of such notice, and therefore that the agreement in the policy in respect to notice is overthrown by the law of the State. But that assumes that the contract was made in New York, whereas it was in fact made in Washington; and the laws of New York are controlling in any re-

spect only because the parties have so stipulated, and, as we have indicated, the stipulation in respect thereto is to be harmonized with the other stipulations in the contract. The ordinary rule in respect to the construction of contracts is this: that where there are two clauses in any respect conflicting, that which is specially directed to a particular matter controls in respect thereto over one which is general in its terms, although within its general terms the particular may be included. Because when the parties express themselves in reference to a particular matter the attention is directed to that, and it must be assumed that it expresses their intent, whereas a reference to some general matter, within which the particular may be included, does not necessarily indicate that the parties had the particular matter in thought. Here, when the parties stipulate that no other notice shall be required, attention is directed to the particular matter of notice. When the stipulation is that the contract shall be construed to have been made in New York, no particular statute is referred to, and the attention may not be directed to the matter of notice or any other special feature of New York law. The special controlled the general; that which must have been in the minds of the contracting parties controls that which may not have been, although included within the language of the latter stipulation. This is the general rule in the construction of all documents—contracts as well as statutes. *Bock* v. *Perkins*, 139 U. S. 628, and cases cited; *Rodgers* v. *United States*, 185 U. S. 83, and cases cited; *Winebrenner* v. *Forney*, 189 U. S. 148; Sedgwick on the Construction of Statutes and Constitutional Law, 2d ed. p. 360 and note; 2 Parsons on Contracts, 6th ed. p. 501 and note.

Obviously the express stipulation in the policy as to the matter of notice must be held paramount and to that extent limiting the provision of the New York law in reference to notice which was not specially referred to in the contract, and can be invoked only because it is one of the various statutes of New York applicable to insurance policies.

Beyond the proposition that by the terms of the policy the

insured was bound to take notice of the time when the payment of the second premium was due, it was also shown by the testimony that the renewal receipt was forwarded to the local agent at Seattle and by him presented to the insured, so that there was notice in fact as well as notice implied from a receipt of the policy. Under those circumstances the insured failed to pay, and continued such failure for four years prior to his death. Yet, notwithstanding his failure to perform his part of the contract—and performance by the insured underlies the obligation of the insurance company to perform on its part— this action was brought to compel the same performance by the company that would have been due if he had performed. It is simple justice between two parties to a contract containing depending stipulations that neither should be permitted to exact performance by the other without having himself first performed. It is true cases arise in which one party is enabled to take advantage of some statutory provision and exact compliance from the other without having himself first complied, and courts may not ignore the scope and efficacy of such statutory provisions, but, nevertheless, a judgment for failure to perform against one party in favor of the other, when the latter was the first delinquent, is offensive to the sense of righteousness and fair dealing. We have had before us a series of cases coming from the same jurisdiction in which, when the insured had for a series of years neglected to pay their insurance premiums or perform their parts of the insurance contract their heirs or beneficiaries have, on their deaths, sought to obtain judgments against the insurance company for the amounts which would have been due on the policies if the insured had performed their stipulations in respect to the payment of premiums. Courts have always set their faces against an insurance company which, having received its premiums, has sought by technical defences to avoid payment, and in like manner should they set their faces against an effort to exact payment from an insurance company when the premiums have deliberately been left unpaid. We cite with ap-

proval the decision of the Supreme Court of Washington in a recent case, *Lone, Administrator*, v. *Mutual Life Insurance Company of New York*, decided December 21, 1903, and reported in 74 Pac. Rep. 689, in which, as in this case, the insured made payment of one premium and then lived years without making further payment, and in which the court said, in reference to the New York statutes here relied upon, and the conduct of the insured:

"The statute, it is true, provides that no life insurance company shall have power to declare forfeited or lapsed any policy by reason of the non-payment of any annual premium, unless notice be given in a specified manner, but a statute must be construed, and its provisions enforced, with reference to its objects; and the legislature, taking into consideration the infirmities of memory, enacted this statute for the purpose of preventing insurance companies from taking what, in homely phrase, is termed 'snap judgment' on its patrons, thereby depriving them of the benefit of contracts by reason of slight negligence on their part, and when there was no real intention to rescind—a beneficent and just law if enforced in the spirit of its enactment, but oppressive and unjust if construed with narrow and literal exactness.

\*    \*    \*    \*    \*    \*    \*    \*

"We are satisfied that the thought never occurred to Rex during his lifetime that he had a claim against this company on the policy which had been issued so many years before, or, if he did, after the lapse of any appreciable time, it was a dishonest thought, for ne knew that he had not performed the duties which devolved upon him under the contract, and that he had no rights thereunder; and there seems to be no just reason why his administrator should demand rights which he had virtually waived. In *Shutte* v. *Thompson*, 15 Wall. 151, where a party was standing upon his statutory right in relation to the notice concerning depositions, the court said that it was not doubted that all the provisions of the statute respecting notice to the adverse party could be waived by him; that a

party could waive any provision either of a contract or of a statute intended for his benefit; and that, if a course of action on his part had misled the other party, he ought not to be allowed to avail himself of his original rights, because under such circumstances he would be availing himself of what was substantially a fraud, and that he should not be allowed to reap any advantage from his own fraud.

\*    \*    \*    \*    \*    \*    \*    \*

"From every consideration of justice and fair dealing, we think the respondent should not be allowed to recover in this case."

The judgments of the Circuit Court and of the Circuit Court of Appeals will be reversed, and the case remanded to the Circuit Court with instructions to set aside the verdict and grant a new trial and to proceed further in accordance with the views expressed in this opinion.

MR. JUSTICE PECKHAM took no part in the consideration and decision of this case.