## SWAYZE v. MUTUAL LIFE INS. CO. OF NEW YORK.

District Court, D. Kansas, First Division.
May 22, 1929.

No. 3198.

McAnany, Alden & Van Cleave, of Kansas City, Kan., for plaintiff.

A. L. Berger, of Kansas City, Kan., for defendant.

McDERMOTT, Circuit Judge. The plaintiff seeks to recover in this action at law, upon two policies of insurance, one of $20,000 and one of $5,000, issued upon the life of her husband. The facts have been agreed upon. Her husband applied for this insurance upon the 23d day of October, 1919; the policies were issued and dated on the 28th day of October, 1919, and delivered to the insured on November 10, 1919. Upon the latter date the first annual premium was paid. No other premiums were ever paid or tendered on these policies. The insured died on January 14, 1924, more than three years after the insurance which he had paid for had lapsed. It is apparent that if the plaintiff recovers, she is getting something for nothing, and that a result will be arrived at which was not within the contemplation of the parties to the contract; for it certainly was not within the contemplation of the parties that paid-up insurance should follow the payment of one annual premium. If a recovery is to be had, there must be a commanding reason therefor.

The plaintiff's case is predicated upon the statute of the state of Kansas, in force at the time these policies were issued, and the terms of which have become a part of the contract of the parties. The statute reads, in part, as follows:

Section 40-332, R. S. Kansas: "It shall be unlawful for any life insurance company other than fraternal doing business in the state of Kansas to forfeit or cancel any life insurance policy on account of non-payment of any premium thereon, without first giving notice in writing to the holder of any such policy of its intention to forfeit or cancel the same."

Section 40-333: "Before any such cancellation or forfeiture can be made for the nonpayment of any such premium the insurance company shall notify the holder of any such policy that the premium thereon, stating the amount thereof, is due and unpaid, and of its intention to forfeit or cancel the same, and such policyholder shall have the right, at any time within thirty days after such notice has been duly deposited in the post office, postage prepaid, and addressed to such policyholder to the address last known by such company, in which to pay such premium; and any attempt on the part of such insurance company to cancel or forfeit any such policy without the notice herein provided for shall be null and void."

The policies of insurance provided that, "In consideration of the annual premium of ———— dollars, the receipt of which is hereby acknowledged, and of the payment of a like amount upon each 28th day of October hereafter until the death of the insured," the company promises to pay the principal sum upon death. There is no obligation upon the part of the insured to pay any premium after the first. A grace period of 31 days is granted for the payment of every premium after the first, during which period the insurance shall continue in force. The policies then provide:

"Except as herein provided the payment of a premium shall not maintain this Policy in force beyond the date when the next premium is payable. If any premium be not paid before the end of the period of grace, then this Policy shall immediately cease and become void, and all premiums previously paid shall be forfeited to the Company except as hereinafter provided."

The application, incorporated in and a part of the policy, provides:

"The proposed policy shall not take effect unless and until the first premium shall have been paid during my continuance in good health, and unless also the policy shall have been delivered to and received by me during my continuance in good health."

On September 28, 1920, and on November 18, 1920, the defendant company mailed to the insured, at his correct post office address, a notice of the due date of the premium on the policy, together with a statement that unless the premium was paid when due, the policy would become void except as to its surrender values. In these notices the amount of the premium was correctly stated. The plaintiff admits the receipt of one of these notices, and admits the mailing of the other but not the receipt thereof.

On the 29th day of November, 1920, the defendant mailed to the assured, and the assured received, a notice of forfeiture and cancellation, given in pursuance to the statute set out above, by which the assured was notified that the premium on the policy in question "is due and unpaid and that the said company will at the expiration of 30 days from this date, forfeit and cancel said policy for the nonpayment of said premium; subject, however, to any provisions contained in said policy which are intended, under certain conditions, to prevent its forfeiture and cancellation."

On the larger of the two policies, this statutory notice recites that the premium due was $698 instead of $598, which was the actual amount of the premium, but it is stipulated that such erroneous figure was the result of oversight or error on the part of the clerk who prepared the notice. There was no such error in the notice as to the smaller policy sued on.

The plaintiff contends that the policies remained in effect until the death of the insured, in 1924, notwithstanding the failure to pay or tender the premiums due in 1920, in 1921, in 1922, and in 1923, because the statutory notice was void for the following reasons:

(a) Because it was mailed on November 29 instead of November 30, and therefore before the grace period for the payment of premiums had expired;

(b) Because the due date of the premium was the anniversary of the delivery of the policy instead of the due date agreed upon by the parties and set out in the contract.

(c) As to the $20,000 policy, because the clerk made a mistake in writing in the amount of the premium that was due;

(d) Because the notices are ambiguous, uncertain, and indefinite.

The briefs of the plaintiff also argue at length certain other questions, such as the requirement that the United States courts should follow the state decisions in such matters as are here involved, and that a repudiation of an obligation by one party excuses a tender by another, and that the courts do not favor forfeitures, none of which need occupy any time.

■ If the notices given were in substantial compliance with the statute, there is no obligation under these policies and the plaintiff cannot recover.

■ The purpose of the statute is plain. It had been the practice of some companies to send no notice to the insured of the premium paying date on his policy. The result was that occasionally an assured would overlook the date, and when he was reminded of the fact, would discover that his insurance could not be reinstated without a health certificate, which sometimes he could not make. The statute therefore places a duty upon the insurance company of notifying the insured of the due date of his premium. There are many statutes of the same general import, but the wording of such statutes is not identical. For example, the Kansas statute does not require the notice to state that the insured must pay the premium within the 30 days provided by the statute. The statute itself gives the policyholder the right to pay the premium within that 30 days. Cases cited by counsel from jurisdictions whose statutes require the notice to set out that right are therefore not pertinent on the point of the contents of the notice. The statute should be construed in the light of its objects. The Supreme Court of the United States, in Mutual Life Insurance Co. v. Hill, 193 U. S. 551, 24 S. Ct. 538, 48 L. Ed. 788, in construing a similar statute, said:

"The statute, it is true, provides that no life insurance company shall have power to declare forfeited or lapsed any policy by reason of the non-payment of any annual premium, unless notice be given in a specified manner, but a statute must be construed, and its provisions enforced, with reference to its objects; and the legislature, taking into consideration the infirmities of memory, enacted this statute for the purpose of preventing insurance companies from taking what, in homely phrase, is termed 'snap judgment' on its patrons, thereby depriving them of the benefit of contracts by reason of slight negligence on their part, and when there was no real intention to rescind—a beneficent and just law if enforced in the spirit of its

enactment, but oppressive and unjust if construed with narrow and literal exactness."

The Supreme Court of Kansas is committed to the same common sense doctrine. In Eikelberger v. Insurance Co. of North America, 107 Kan. page 9, 190 P. 611, it was contended that an insurance company could not cancel a policy of fire insurance, because it had failed to collect upon a premium note for a small amount, in violation of the Anti-Discrimination Law of the state (Gen. St. 1915, §§ 5363–5373). The court held that it was not a substantial violation of that law for the insurance company to deny liability and at the same time to offer to surrender a premium note without deducting any portion of the note for insurance earned before the default. The court held that substantial compliance with the law was sufficient and said:

"It would make a mere fetich, an interminable and oppressive nuisance, of a wise and efficient statute to interpret the anti-discrimination law in any other fashion."

In New York Life Insurance Co. v. Dingley, 93 F. 153 (9 C. C. A.), in passing upon a similar notice statute, it was held that the provisions of the statute should be strictly interpreted in favor of the assured and that the defense of forfeiture was available "if there has been any substantial departure on its part from the provisions of the statute in regard to notice." It may be observed, although not necessary to hold, that while an insured might forget for a few weeks that a premium was payable, it is not probable that he would forget it for more than three years.

Taking up then the objections which the plaintiff has made to the notice in question, in light of the common sense rule of interpretation laid down by both the state and federal courts:

First. The plaintiff seeks to recover on the larger policy because, through an oversight of a clerk, the premium was stated to be $698, when in fact it was $598. There is no contention that the assured was misled by this statement. On the contrary, his policy in clear language stated that the premium was $598; the assured had received a notice on the 28th day of September clearly stating that his premium was due and setting out the correct amount; he had received another such notice on November 18, again setting out the correct amount. It was apparent to the most obtuse that it was a typographical error. It will be remembered that the assured did not tender the correct amount; neither did he make any inquiry concerning the amount. It was a harmless typographical error, and a judgment of $20,000 cannot be predicated on it. A similar situation was presented to this court, some years ago, and Judge Pollock held that the error as to the amount was of no effect; that the purpose of the statute was to advise the insured that his premium was due; that that purpose had been carried out; and since the insured was not misled by the error, no rights could be predicated upon it. This is sound law. Branch v. Farmers' Life Insurance Co. (D. C.) 270 F. 863.

Second. It is claimed that the notice was prematurely sent, because the policy provided for 31 days' grace, and the notice was mailed out the day before the grace period expired. The Supreme Court of Kansas has ruled that the notice may not be mailed prior to the accrual of the right to cancel the policy, and that it may not be mailed prior to the expiration of the grace period. Priest v. Bankers' Life Ass'n of Des Moines, Iowa, 99 Kan. 295, 161 P. 631. In that case the notice of forfeiture was sent 30 days prior to the accrual of the right of forfeiture. It is very doubtful whether the Supreme Court of Kansas would draw so fine a line upon the matter as to keep the policy alive indefinitely because of an error of one day in sending out the notice, where no prejudice was shown to have resulted on account of such trifling error. The point need not be ruled, however, because by the application of the familiar rule of excluding the first and including the last day, it is seen that the notice was not premature. The anniversary date of the policy was October 28. If the first day is excluded and the last day is included, the 31 days of grace expired at midnight on the 28th day of November; October having 31 days. A notice mailed on the 29th of November was not premature. The plaintiff cites two Kansas statutes establishing the rule of "excluding the first and including the last," which are, however, not exactly pertinent.

Third. The principal reliance of the plaintiff apparently is that since the policy was not delivered until the 10th of November, and since the company assumed no liability prior to that date, the second premium was not due until November 10, 1920. To support this contention, plaintiff cites one Kansas case, Brady v. Casualty Co., 114 Kan. 865, 220 P. 1033, in which action the policy was reformed to conform to the actual agreement of the parties, and hence is of no bearing here; and other cases where the point at issue was not the due date of the premium, but the amount of insurance in point

of time, which the insured purchased with his first premium. The question in this case is not how much insurance the insured purchased with his first premium. The question in this case is when was the premium due. The statute provides that the company shall notify the assured that his premium is "due and unpaid" and there can be no possible disagreement about the contract which the parties made upon this point. The contract specifically provides that the premium shall be paid upon the 28th day of October of each year. This is the contract the parties made, and the court cannot change it. That ends the matter. The point has been presented and directly ruled in an exactly parallel case in the Supreme Court of Kansas; and the plaintiff asserts on other points that the state decisions are controlling upon this court. Wolford v. National Life Ins. Co., 114 Kan. 411, 219 P. 263, 32 A. L. R. 1248. The plaintiff contends that the Supreme Court intended to overrule this decision by the Brady Case, 114 Kan. 865, 220 P. 1033. The Brady Case was an action to reform. If the policy in suit here had been reformed, then the due date would be changed. This, however, is an action on the policy and not an action to reform it.

Again the Kansas court and the federal courts are in complete accord. The point has been ruled adversely to the plaintiff in the following cases: Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; McCampbell v. New York Life Ins. Co., 288 F. 465 (5 C. C. A.), certiorari denied 262 U. S. 759, 43 S. Ct. 705, 67 L. Ed. 1219; McConnell v. Provident Savings Life Assur. Soc., 92 F. 769 (6 C. C. A.); Johnson v. Mutual Benefit Life Ins. Co., 143 F. 950 (8 C. C. A.); Sellars v. Continental Life Ins. Co., 30 F.(2d) 42 (4 C. C. A.).

Fourth. The plaintiff contends that the notice is ambiguous and uncertain. This contention is quite beyond my comprehension. It is suggested that the last sentence of the notice renders the whole notice nugatory. After a plain statement, in the language of the statute, that the premium is due and unpaid and that the company intends to forfeit and cancel the same at the expiration of 30 days, the notice recites that it is subject to any provisions of the policy which are intended to prevent its forfeiture and cancellation. This manifestly refers to the provisions for paid-up insurance or other applications of the reserve value thereof. The notice is sufficient.

The defendant urges that, in any event, the parties have indicated a clear intention to abandon their contract. From the facts stated there is no particle of doubt of the fact of such abandonment. For more than three years the insured made no effort to pay or tender any premiums under this policy, nor did he make any inquiry concerning the policy. He paid no attention to the three notices sent to him. It is simply an ordinary case where an insured concluded to drop his policy. Reynolds v. Insurance Co., 105 Kan. 669, 185 P. 1051, 7 A. L. R. 1558, and Cunningham v. Life Ins. Co., 106 Kan. 631, 189 P. 158 are cited by plaintiff as controlling authority. In each of these cases, however, the insured died within the 30-day period provided by statute; that is, if the company had given the statutory notice, the policies would have been alive when the death occurred. In the case at bar, the insured lived more than three years after the statutory 30-day period expired, on any method of computation, and using either the due date or delivery date of the policy as a starting point. So the Kansas cases are not in point. On the other hand, there are many well-considered cases by the Supreme Court of the United States dealing with notice laws of the same import as the Kansas statute, holding that the statute does not prevent a mutual abandonment of the contract. Mutual Life Ins. Co. v. Phinney, 178 U. S. 327, 20 S. Ct. 906, 44 L. Ed. 1088; Mutual Life Ins. Co. v. Sears, 178 U. S. 345, 20 S. Ct. 912, 44 L. Ed. 1096; Mutual Life Ins. Co. v. Hill, 178 U. S. 347, 20 S. Ct. 914, 44 L. Ed. 1097; Mutual Life Ins. Co. v. Allen, 178 U. S. 351, 20 S. Ct. 913, 44 L. Ed. 1098. Under the agreed facts in this case I find that the parties abandoned the policy, and believing that the authorities last cited are not in conflict with the Reynolds Case, supra, I am of the opinion that irrespective of any question of the sufficiency of the notice, there is no liability under these policies.

There is neither right nor justice in the claim of the plaintiff. The language of the Supreme Court in the last Hill Case (193 U. S. 551, 24 S. Ct. 538, 48 L. Ed. 788) controls the disposition of this case.

"We are satisfied that the thought never occurred to Rex during his lifetime that he had a claim against this company on the policy which had been issued so many years before, or, if he did, after the lapse of any appreciable time, it was a dishonest thought, for he knew that he had not performed the duties which devolved upon him under the contract, and that he had no rights thereunder; and there seems to be no just reason

why his administrator should demand rights which he had virtually waived. In Shutte v. Thompson, 15 Wall. 151 [21 L. Ed. 123], where a party was standing upon his statutory right in relation to the notice concerning depositions, the Court said that it was not doubted that all the provisions of the statute respecting notice to the adverse party could be waived by him; that a party could waive any provision either of a contract or of a statute intended for his benefit; and that, if a course of action on his part had misled the other party, he ought not to be allowed to avail himself of his original rights, because under such circumstances he would be availing himself of what was substantially a fraud, and that he should not be allowed to reap any advantage from his own fraud. * ∴ ˑ 'From every consideration of justice and fair dealing, we think the respondent should not be allowed to recover in this case.' ⁜ ˑ *

"Courts have always set their faces against an insurance company which, having received its premiums, has sought by technical defenses to avoid payment, and in like manner should they set their faces against an effort to exact payment from an insurance company when the premiums have deliberately been left unpaid."

There will be a judgment for the defendant on both policies of insurance. The declarations of law requested by the plaintiff are denied. The declarations of law requested by the defendant are granted.