## MINNESOTA MUT. LIFE INS. CO. v. COST.
### No. 966.

Circuit Court of Appeals, Tenth Circuit.
July 27, 1934.

Henry I. Eager, of Kansas City, Mo., and Benjamin F. Hegler, of Wichita, Kan. (William C. Michaels and Meservey, Michaels, Blackmar, Newkirk & Eager, all of Kansas City, Mo., and Doherty, Rumble, Bunn & Butler, of St. Paul, Minn., on the brief), for appellant.

D. C. Martindell and C. M. Williams, both of Hutchinson, Kan. (W. D. P. Carey, of Hutchinson, Kan., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

Appellee recovered a judgment upon a life insurance policy which had lapsed for nonpayment of premiums before the insured's death, and upon which no reserve values had accrued. While a notice in conformity with section 40—411, R. S. Kan. 1931 Supp., was given less than thirty days before the premium was payable without grace, appellee successfully contended below, and renews the contention here, that the notice was ineffective because (1) the policy contained no provision for cancellation or forfeiture at the end of the grace period, and hence notice could not be given until the grace period expired, and (2) that the statute by implication requires a further notice, after the grace period has expired, that the policy had lapsed. A third contention is made by letter, after submission to this court, to the effect that the payment of a quarterly premium keeps the insurance alive for a year.

There is an agreed statement of the pertinent facts. The policy provides that it is based upon, and issued in consideration of, an annual premium paid in advance "and of the further payment of a like sum on or before each anniversary of the date hereof during the lifetime of the insured or until the prior maturity of the policy as an endowment; but premiums may be paid in instalments at the company's adopted rates for fractional premiums as stated in the margin hereof."

Under the heading "Premiums" the contract provides:

"Except as herein expressly provided, the payment of any premium or instalment thereof shall not maintain the policy in force beyond the date when the next premium or instalment thereof is payable.

"A grace of one month (not less than thirty days) and without interest therefor, will be allowed for the payment of every premium after the first, during which time the insurance shall continue in force. If death occurs during the period of grace the overdue premium will be deducted from the amount payable hereunder."

There are other provisions to which reference might be made, but these are sufficient to put beyond the pale of argument the conclusion that, save for reserve values not present here, the insurance coverage stops when the premiums cease. The institution of life insurance is founded upon the principle that the risk is carried in consideration of premiums paid. The Supreme Court of Kansas has

said that "insurance companies can only survive by the prompt payment of premiums," Wolford, Administratrix, v. Nat. Life Insurance Co., 114 Kan. 411, 414, 219 P. 263, 264, 32 A. L. R. 1248; the Supreme Court of the United States has said "promptness of payment [of premiums] is essential in the business of life insurance," New York Life Ins. Co. v. Statham, 93 U. S. 24, 30, 23 L. Ed. 789. To the same effect, see Mutual Life Insurance Co. v. Hill, 193 U. S. 551, 559, 24 S. Ct. 538, 48 L. Ed. 788; Bach v. Western States Life Ins. Co. (C. C. A. 10) 51 F.(2d) 191; Jackson v. Mutual Life Ins. Co. (C. C. A. 8) 186 F. 447. From the four corners of the contract here involved, the intention of the parties is clearly discernible: For the first premium paid, the company insured Cost's life for one year, and gave him an irrevocable option to continue that insurance from year to year, or from quarter to quarter, upon payment of the stipulated premium. Cost was not obligated to pay renewal premiums; if he did not, no agreement was canceled and no right forfeited; his option expired by his nonacceptance. When he failed to pay a premium due, his insurance automatically lapsed or expired, and, save for the statute to be hereinafter considered, no affirmative action on the part of the company was necessary. Iowa Life Ins. Co. v. Lewis, 187 U. S. 335, 23 S. Ct. 126, 47 L. Ed. 204; Wolford, Administratrix, v. Insurance Co., 114 Kan. 411, 219 P. 263, 32 A. L. R. 1248; Lightner v. Insurance Co., 97 Kan. 97, 101, 154 P. 227; Lincoln Nat. Life Ins. Co. v. Hammer (C. C. A. 8) 41 F.(2d) 12, 18; Long v. Monarch Accident Ins. Co. (C. C. A. 4) 30 F.(2d) 929; Wastun v. Lincoln Nat. Life Ins. Co. of Ft. Wayne, Ind. (C. C. A. 8) 12 F.(2d) 422, 424; Mutual Reserve Fund L. Ass'n v. Cleveland Woolen Mills (C. C. A. 6) 82 F. 508; Brams v. N. Y. Life Ins. Co., 299 Pa. 11, 148 A. 855; Geha v. Baltimore Life Ins. Co., 110 Pa. Super. 236, 168 A. 525; Kukuruza v. John Hancock Mutual Life Ins. Co., 276 Mass. 146, 176 N. E. 788; Topinka v. Minn. Mut. Life Ins. Co., 189 Minn. 75, 248 N. W. 660; Williston on Contracts, § 758; Couch on Insurance, § 627; Cooley's Briefs on Insurance, p. 3543; 2 Joyce on Insurance, 1106.

■ The contract being clear and unambiguous, there is no occasion for invoking the rule that an ambiguity in an insurance contract will be resolved in favor of the insured. A strained construction will not be resorted to in order to raise an ambiguity. Order of United Commercial Travelers v. Edwards (C. C. A. 10) 51 F.(2d) 187; Chase v. Business Men's Assur. Co. of America (C. C. A. 10) 51 F.(2d) 34; East & West Ins. Co. of New Haven, Conn. v. Fidel (C. C. A. 10) 49 F. (2d) 35.

The agreed facts demonstrate that appellee is not entitled to recover on the contract. The policy was issued December 17, 1929, and the first annual premium paid. On the next premium paying date, the insured exercised his right to pay his premium quarterly; and thereafter made two quarterly payments, carrying the insurance, with the grace period, to July 17. He neither paid nor tendered the next quarterly premium, although repeatedly notified thereof. The grace period expired July 17. He was found dead the morning of July 28.

■■ Since the submission of this appeal, the contention is advanced for the first time that by the payment of a quarterly premium, the insurance is extended for a year, and we are cited to Pedersen v. United Life Ins. Co., 139 Kan. 695, 33 P.(2d) 297. Construing the policy there involved, the court found no provision terminating the policy at the end of the quarter. There is a specific provision, quoted above, in this policy to that effect. In any event, the construction of a life insurance policy is a matter of general law, Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 549, 34 S. Ct. 186, 58 L. Ed. 356; Washburn & Moen Mfg. Co. v. Reliance Marine Ins. Co., 179 U. S. 1, 15, 21 S. Ct. 1, 45 L. Ed. 49; O'Brien v. Massachusetts Bonding & Insurance Co. (C. C. A. 8) 64 F.(2d) 33; Curtis v. Prudential Ins. Co. of America (C. C. A. 4) 55 F. (2d) 97, and the authorities heretofore cited, and many others examined, establish the general law to be that a year's insurance cannot be purchased by paying a premium for three months. The Supreme Court of Kansas, in Balch v. Life Insurance Co., 116 Kan. 560, 227 P. 326, 327, held:

"This policy terminated at the expiration of each three-month period for which the premium had been paid unless an additional premium for an additional three months was paid before the expiration of the three months during which the policy was effective."

■ We come now to the notice statute in force when this policy was issued, and which is binding upon the parties ex proprio vigore. In 1913 the Kansas legislature, following the early lead of New York (Laws N. Y. 1876, c. 341) and other states, passed a statute (Laws Kan. 1913, c. 212) making it unlawful for a life insurance company to "forfeit or cancel" a policy for nonpayment of premiums with-

out first giving written notice of its intent so to do, and affording the insured thirty days after such notice in which to pay such premium. The Supreme Court of Kansas held that such notice must be given after default, and that there was no default until the expiration of the grace period. Priest v. Bankers' Life Association, 99 Kan. 295, 161 P. 631. Since the thirty-day statutory period and the contractual grace period could not run concurrently, the result was that policies with provisions for grace periods were at a decided disadvantage; by providing that the statutory period might run concurrently with the contractual grace period, the discrimination against policies carrying grace provisions would be removed. Thus came about the amended statute of 1925 (chapter 184) carried forward in the 1927 codification (sections 40—410 and 40—411, c. 231, Laws 1927 [R. S. Kan. Supp. 1931, 40—410, 40—411]). Section 40—410 provides that it shall be unlawful for any life insurance company doing business in the state "within six months after default in payment of any premium or installment of premium, to forfeit or cancel any life insurance policy on account of nonpayment of any such premium or installment of premium thereon, without first giving notice in writing to the insured under such policy of its intention to forfeit or cancel the same."

Section 40—411 is as follows (the amendment pertinent here is italicized):

"Before any such cancellation or forfeiture can be made for the nonpayment of any such premium the insurance company shall notify the insured under any such policy that the premium thereon, stating the amount thereof, is due and unpaid, and of its intention to forfeit or cancel the same, and such insured shall have the right, at any time within thirty days after such notice has been duly deposited in the post office, postage prepaid, and addressed to such insured to the address last known by such company, to pay such premium: *Provided, That in lieu of the notice hereinbefore provided, in the case of policies providing for a period of grace of not less than thirty days, or one month, for the payment of premiums and containing any provision for cancellation or forfeiture in case of nonpayment of premiums at the end of such period, the insurance company may, not more than thirty days prior to the date specified in such policy when any premium will become due and payable without grace, in like manner notify the insured under any such policy, of the date when such premium will fall due, stating the amount thereof, and its intention to forfeit or cancel the same if such premium be not paid within the period of grace provided in the policy;* and any attempt on the part of such insurance company, within six months after default in the payment of any premium, to cancel or forfeit any such policy without the notice herein provided shall be null and void."

A notice complying precisely with the statute, and within the time named in the proviso, was given. It is conceded that the policy provides "for a period of grace of not less than thirty days, or one month." Nevertheless it is contended that the notice was ineffectual because sent prior to the end of the grace period, because, it is said, the policy does not contain "any provision for cancellation or forfeiture in case of nonpayment of premiums at the end of such period"; hence, the argument proceeds, the proviso is not applicable, and under the Priest Case, the notice was premature and ineffective.

As has been seen, the policy clearly provides "that payment of any premium or installment thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is payable." The next installment in this case was payable as late as July 17, the contract, by virtue of its provision for a month's grace, giving the insured until that date to pay. The policy therefore provides that it lapses or expires at the end of the grace period.

But, the argument is, the statute requires a provision for "cancellation or forfeiture" and this provision is for lapse. That is running literalism into the ground. If such punctilious nicety in the use of language is demanded in section 40—411, then the same nicety must be used in section 40—410; and if so, then the notice statute has no place in this case, for section 40—410 only forbids a company "to forfeit or cancel" a policy without notice, and all that occurred here was a "lapse." No rule of construction can permit of the use of the word "forfeiture" as synonymous with "lapse" in the first section and deny that use in the companion section. Furthermore, in John Hancock Mut. Life Ins. Co. v. Chevillon (C. C. A. 7) 45 F.(2d) 980, 983, it was held that an identical provision was "the equivalent of a definite provision for forfeiture in the case of default in premium payments."

Such literalism would destroy the statute, for, precisely speaking, life policies are not canceled or forfeited when they lapse for nonpayment of premiums. The legislature used

those words as they are frequently used, by laymen, courts, and text-writers, to include the result which follows nonpayment of premiums. The intent of the legislature is entirely clear; it intended to require life companies to warn its policyholders of the due-dates of their premiums, and to afford them a reasonable time in which to pay the premiums after the warning, to the end that the protection afforded widows and children should not be lost by forgetfulness or oversight. That intent is clear by a reading of the statute; it has been declared by many courts in construing similar statutes. The Supreme Court of the United States held that a trifling mistake in the notice mailed did not perpetuate the insurance coverage, saying in part:

"The purpose of the statute was to prevent a forfeiture by the nonpayment of the premium when due, because of inadvertence or forgetfulness; and when the assured receives the very notice required by the statute, its purpose is fulfilled, although the notice contains in another respect such a mistake as does this notice. · · A statute of this kind should not be construed so as to make it a trap for either side. Forfeitures, though generally not regarded with favor by courts of equity, yet are necessary, and should be fairly enforced, in cases of life insurance. Promptness of payment is essential in such business." Nederland Life Ins. Co. v. Meinert, 199 U. S. 171, 179, 181, 26 S. Ct. 15, 17, 50 L. Ed. 139, 4 Ann. Cas. 480.

The Kansas Supreme Court, speaking through Chief Justice Johnston, summarized the purpose of this statute in the following words:

"In effect, these sections provide that a life insurance company cannot forfeit a life insurance policy without giving notice to a holder of the policy of its intention to forfeit and cancel the same, and that after the giving of a notice of a purpose to forfeit and cancel the policy for nonpayment of a premium, the policyholder shall have thirty days after the notice to pay the premium, and thus keep the policy alive." Loades v. Woodmen Accident Co., 134 Kan. 337, 338, 5 P.(2d) 798, 799.

The Eighth Circuit Court of Appeals and the United States District Court of Kansas have likewise construed the statute. Lincoln Nat. Life Ins. Co. v. Hammer (C. C. A. 8) 41 F.(2d) 12; Swayze v. Mutual Life Ins. Co. (D. C. Kan.) 32 F.(2d) 784. The notice given in this case fulfills both the spirit and the letter of the statute.

The next contention of appellee is that, even if the notice given complied with the statute, it was necessary to give still another notice of lapse after the grace period expired. It should be sufficient to say that neither the contract nor the statute requires any such second notice, and we have neither the power nor the inclination to amend either the contract or the statute in this respect. It is also significant that in a considerable number of cases dealing with this statute during the twenty-one years of its history,[1] the Supreme Court of Kansas has never intimated that the statute required two notices, and in none of them does it appear that two notices were in fact given.

If more be needed on the point, it is supplied by a consideration of the history of this statute. As pointed out by Justice Burch in Priest v. Bankers' Life Ass'n, 99 Kan. 295, 161 P. 631, the New York statutes at one time or another provided for notice before default, notice after default, or left it optional. Kansas first provided for notice after default only, and then by the 1925 amendment, provided for notice before default in lieu of notice after, in policies containing a provision for grace. To require both notices, as counsel contend for, would be to do what the Kansas legislature deliberately declined to do, and would render nugatory the 1925 amendment. The particular purpose of that amendment was to permit notice to be given before instead of after default. To construe it to require notice both before and after would emasculate the statute and defeat the obvious intent of the legislature.

Appellee's argument is that since the no-

---

[1] Lightner v. Prudential Ins. Co., 97 Kan. 97, 154 P. 227; Priest v. Bankers' Life Ass'n, 99 Kan. 295, 161 P. 631; Wolford, Administratrix v. Ins. Co., 114 Kan. 411, 219 P. 263, 32 A. L. R. 1248; Balch v. Life Insurance Co., 116 Kan. 560, 227 P. 326; Clover v. Bankers Life Co., 117 Kan. 683, 232 P. 1068; Sanders v. Bank Savings Life Ins. Co., 118 Kan. 120, 233 P. 1017; Loewenstein v. Missouri State Life Ins. Co., 120 Kan. 75, 242 P. 123; Zeigler v. Kansas Life Ins. Co., 120 Kan. 252, 243 P. 272, 44 A. L. R. 1367; Bank Savings Life Ins. Co. v. Baker, 120 Kan. 756, 244 P. 863; Farmers' & Bankers' Life Ins. Co. v. Brown, 122 Kan. 778, 253 P. 560; Wegner v. Federal Reserve Life Ins. Co., 130 Kan. 600, 287 P. 591; Loades v. Woodmen Acc. Co., 134 Kan. 337, 5 P.(2d) 798; Pedersen v. United Life Ins. Co., 139 Kan. 695, 33 P.(2d) 297.

524

tice advised the insured "of its intention to forfeit or cancel," he must be notified that the intent was carried out. But the notice contained exactly what the statute said it should contain, and, having complied with the statute, the policy lapsed by its terms without any affirmative action by the insurer. See cases cited, supra. A notice of lapse was sent insured after default and after his death, coupled with an importunity to avail himself of a contractual privilege of reinstatement. This cannot be construed as an acknowledgment that the statute required a second notice after lapse.

The policy having lapsed on July 17, the statutory notice having been given, and no reserve values having accrued, appellant's motion for judgment at the close of the trial should have been sustained. Since there is an agreed statement of all material facts, there is no occasion for a new trial. Howbert v. Penrose (C. C. A. 10) 38 F.(2d) 577, 68 A. L. R. 820.

The judgment is reversed with directions to render judgment for the defendant.

Reversed.