**SWISS BANK CORPORATION, a Swiss Banking Corporation; and O'Connor Investments, an Illinois partnership, Plaintiffs,**

**v.**

**DRESSER INDUSTRIES, INC., a Delaware corporation, Defendant.**

No. 96 C 2933.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 3, 1996.

defendants have not demonstrated that it is ad-   missible.

Paul E. Dengel, Michael N. Delgass, Schiff, Hardin & Waite, Chicago, IL, for Swiss Bank Corporation, O'Connor Investments.

Philip Scott Beck, Peter Benjamin Bensinger, Jr., Andrew L. Goldman, Bartlit Beck Herman Palenchar & Scott, Chicago, IL, for Dresser Industries, Inc.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

### I. Background

Anyone who has given a deadline to another has learned that it is unwise to use the phrase "prior to x day". Many will regard the deadline to mean "by x day", meaning sometime before the close of business on "x". The fact remains that "prior to x" does not mean the same thing as "by x" and the legal consequences are very different. The plaintiffs here seek to avoid the price paid for reading "prior to" as meaning the same thing as "by". It can do so in two ways. It can show that the use of "prior to x" is so commonly understood to mean "by x" that it is unfair, even deceptive to use "prior to x" as a deadline, a deliberate creation of a trap for the unwary. This showing seems impossible to make and plaintiffs do not try. Instead the plaintiffs argue that in the context of the contract in this case, the use of "prior to x" means "by x" or, alternatively, that "prior to x" is ambiguous here and one must consider parole evidence that the true meaning of the deadline was "by x".

On the basis of this argument, plaintiffs have brought this action for breach of contract regarding a stock warrant agreement that expired "prior to April 5, 1996". This case is now before the court upon Defendant Dresser's Motion to Dismiss the Complaint.

The plaintiffs have alleged that on April 5, 1991, Baroid Corporation ("Baroid") issued a stock warrant ("Baroid Warrant") to Diamant Boart S.A. ("Diamant") granting Diamant the right to purchase up to 1,000,000 shares of Baroid for $7.875 per share.

On January 21, 1994, Defendant Dresser Industries, Inc. ("Dresser") acquired Baroid. Dresser assumed Baroid's obligations under the Baroid Warrant and issued a replacement certificate ("Diamant Warrant") to Diamant. The replacement granted the same benefits under the same terms as contained in the Baroid Warrant. However, the Diamant Warrant granted the right to purchase up to 400,000 shares of Dresser stock for $19.6875 per share to adjust for Dresser's acquisition of Baroid.

On May 19, 1994, plaintiff O'Connor Investments ("O'Connor") purchased the Diamant Warrant from Diamant. On or about June 21, 1994, Dresser issued a replacement certificate ("O'Connor Warrant") to O'Connor. Then, on or about December 29, 1994, plaintiff O'Connor sold the O'Connor Warrant to plaintiff Swiss Bank Corporation ("SBC").

On April 8, 1996, SBC attempted to exercise its rights under the O'Connor Warrant by offering to purchase 400,000 shares of Dresser stock. However, Dresser refused to sell any shares on the grounds that the warrant had already expired. Subsequently, SBC and O'Connor brought this action based on diversity jurisdiction claiming that Dresser's refusal to sell stock to SBC breached the O'Connor Warrant contract. The Defendant moved to dismiss the complaint under Fed. R.Civ.P. 12(b)(6).

## II. Standard of Review

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Authority,* 892 F.2d 583, 586 (7th Cir.1989)). A plaintiff fails to state a claim upon which relief may be granted only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Leahy v. Board of Trustees of Community College Dist. No. 508,* 912 F.2d 917, 921 (7th Cir.1990) (quoting *Conley v. Gibson,* 355 U.S. 41, 44–45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

"[F]or the purposes of determining whether the complaint states a claim, the facts alleged, plus reasonable inferences therefrom, are taken as true, and the question is then whether on those assumptions plaintiff would have a right to legal relief." *Bane v. Ferguson,* 890 F.2d 11, 13 (7th Cir.1989).

## III. Analysis

Did the defendant breach the O'Connor Warrant contract? To answer this, the court must construe the contract to determine whether it was valid at the time that SBC attempted to exercise its rights thereunder. According to the terms of the O'Connor Warrant, Delaware substantive law governs its interpretation and validity.

■ Under Delaware law, a contract should be construed as a whole to satisfy the reasonable expectations of the parties at the time they entered into the contract. See *Northwestern Nat'l Ins. Co. v. Esmark, Inc.,* 672 A.2d 41, 43 (Del.1996); *Demetree v. Commonwealth Trust Co.,* 1996 WL 494910, at *3 (Del.Ch.).

■ Delaware follows the plain meaning rule of contract construction which instructs courts to rely solely on the clear, literal meaning of the words if a contract is clear on its face.[1] *Demetree,* 1996 WL 494910, at *4

(citing *Myers v. Myers,* 408 A.2d 279, 281 (Del.1979)). An unambiguous integrated written contract should be construed in the way that an objective, reasonable third party would understand it. *Demetree,* 1996 WL 494910, at *4. There is no room for contract interpretation or construction, *Pellaton v. Bank of New York,* 592 A.2d 473, 478 (Del. 1991), and courts may not consider parole evidence to interpret the parties' intent. *Citadel Holding Corp. v. Roven,* 603 A.2d 818, 822 (Del.1992).

■ However, if a contract is found to be ambiguous or susceptible to various interpretations, courts should consider the context and circumstances to decide the contracting parties' intended meaning. *Demetree,* 1996 WL 494910, at *4 (citing *Klair v. Reese,* 531 A.2d 219, 223 (Del.1987)).

■ Under these commonplace rules, the first inquiry must be whether the O'Connor Warrant is ambiguous. This requires an examination of the contractual language referring to the contested expiration date. Two provisions in the text of the O'Connor Warrant pertain directly to the expiration date. First, a provision on the first page of the contract reads in relevant part, "DRESSER INDUSTRIES, INC. ... hereby grants to O'CONNOR INVESTMENTS ... or its registered assigns ... the right to purchase from the Company up to 400,000 shares (the "Shares") of its Common Stock ... exercisable at any time *prior to April 5, 1996.*" (emphasis added). Complt.Exh. D at 1.

Second, under the heading of "Exercise Period," the contract states in relevant part, "[t]he Registered Holder may exercise ... the rights represented by this Warrant at any time ... during the Exercise Period *prior to five years from the Closing Date.*" (emphasis added). Cmplt.Exh. D at 2.

Both of these provisions in the text of the O'Connor Warrant use the words "prior to" to define the term of the contract. The first provision describes the term as expiring "pri-

---

1. The plain meaning rule disregards the actual subjective intent of the parties. This approach seems especially appropriate in this case because the parties to this lawsuit acquired their rights through assignments from the original contract-

ing parties. Because the original contracting parties are not involved in this lawsuit, it would be difficult, if not impossible, to understand how the parties' intent at the time of drafting shaped the language of the contract at issue here.

or to April 5, 1996". The second provision defines the term as expiring "prior to five years from the Closing Date". The parties agree that the term Closing Date refers to April 5, 1991, and that the words "five years from the Closing Date" refer to April 5, 1996. Cmplt. para. 24; Pl.Resp. at 7; Def.Memo. at 4–5. Thus, I find that "prior to April 5, 1996" has the same meaning as "prior to five years from the Closing Date". The parties in this case do not dispute the significant facts, however they disagree over their legal relevance. Plaintiffs argue that "prior to April 5" means that the Stock Warrant expired prior to the end of the day on April 5, 1996. Pls.Resp. at 6. Defendant, on the other hand, argues that this provision means the warrant expired before April 5, 1996. Def.Memo. at 4–5.

"Although the parties disagree as to the proper interpretation of the contract, their disagreement does not create an ambiguity." *Northwestern Nat'l Ins. Co.*, 672 A.2d at 43. Thus, the mere fact that the parties now dispute the proper interpretation of the O'Connor Warrant does not require finding that the agreement is ambiguous.

There do not appear to be any Delaware cases dealing with the construction of the phrase "prior to" within a contract. However, the United States Supreme Court decided a case wherein a similar issue arose regarding a deadline defined by the words "prior to". In *United States v. Locke*, 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985), the Court found that a provision in the Federal Land Policy and Management Act requiring mining claimants to file with government officials "prior to December 31", meant that filings had to be made "on or before December 30". *Locke*, 471 U.S. at 96, 105 S.Ct. at 1793–94. Accordingly, the Court found that mining claimants who had filed on December 31 had missed the deadline by filing one day too late. *Id.* at 87–89, 105 S.Ct. at 1789. The Court's interpretation of "prior to" also accords with the ordinary usage of this phrase. "Prior to" is normally understood to mean "before". *See Webster's II*, (New Riverside University Dictionary ed., 1984).

The Supreme Court's interpretation of the words "prior to" applies in this case. Just as

the Court in *Locke* found that "prior to December 31" meant "on or before December 30", this court finds that "prior to April 5" in the O'Connor Warrant means "on or before April 4". The literal meaning of the language in the O'Connor Warrant provides a reasonable answer as to the contract's expiration date. The contract was valid on April 4, 1996 and void on April 5, 1996. Thus, I conclude that this contract is not ambiguous.

■ Still, plaintiffs point to other language in the contract to support their argument that "prior to April 5" means "by the end of April 5". Specifically, plaintiffs refer to a descriptive heading on the first page of the warrant that states, *"Void After Five Years From Date of Original Issuance."* Pls.Resp. at 5.

I recognize that this descriptive heading read in conjunction with the text discussed above could tend to render the O'Connor Warrant susceptible to multiple interpretations. However, the heading is not legally determinative for several reasons. First, the contract itself provides a mechanism for properly interpreting this inconsistent language. Part 10 of the O'Connor Warrant labeled "Descriptive Headings: Governing Law" states that "[t]he descriptive headings of the several parts and paragraphs of this Warrant are inserted for convenience only and do not constitute a part of this Warrant." Cmplt.Exh. D at 6. Therefore, the descriptive heading, though clumsily drafted, is not part of the contract and its meaning is not controlling.

Second, the decision to disregard the descriptive heading in the O'Connor Warrant is also consistent with accepted methods of contract and statute construction. In *United States v. Leslie Salt Co.*, 350 U.S. 383, 389, 76 S.Ct. 416, 420, 100 L.Ed. 441 (1956), the United States Supreme Court construed a commercial instrument for tax purposes. There, the Court found that the "essential characteristics" of the instruments controlled "regardless of their descriptive caption." *Id.* In addition, although Delaware appears to lack case law on point, the Delaware Code has addressed the legal weight of descriptive headings in the context of statute interpretation. The Code states that "the descriptive

headings ... immediately preceding or within the texts of the individual sections of this Code ... do not constitute part of the law." 1 Del. Code Ann. § 306 (1995).

Third, this construction of the O'Connor Warrant also accords with general rules of contract construction. It is well established that a specific clause should prevail over a more general one in a contract. *Mutual Life Ins. Co. of N.Y. v. Hill,* 193 U.S. 551, 558, 24 S.Ct. 538, 540–41, 48 L.Ed. 788 (1904); 3 A.L. Corbin, *Corbin on Contracts* § 547 at 176 (1960 ed.) ("If the apparent inconsistency is between a clause that is general ... and one that is more ... specific in its coverage, the latter should generally be held to operate as a modification and pro tanto nullification of the former."). Applying this rule of construction to the language at issue leads to a finding that the more specific text—i.e. "prior to April 5"—modifies and nullifies the general language of the descriptive heading—i.e. "Void After Five Years From Date of Issuance".

■ Finally, plaintiffs argue that a prospectus released by Dresser in April 1994 in compliance with federal securities regulations provides additional proof that the contract's expiration date was April 5, 1996. However, in light of my decision that the O'Connor Warrant is not ambiguous, I will not consider parole or extrinsic evidence. Moreover, because the prospectus was published in April 1994, three years after the contract at issue was formed, I find it is irrelevant on the matter of the parties' intent at the time of contract formation.

For the foregoing reasons, the court concludes that this contract is not ambiguous. The O'Connor Warrant had to be exercised on or before April 4, 1996. Even if SBC had been ready, willing, and able to exercise its contractual rights on April 5, 1996, SBC would have acted one day too late. Consequently, Dresser's refusal to sell its stock to SBC on April 8, 1996 did not amount to a breach of contract because the O'Connor Warrant was no longer in effect. Accordingly, Count I of the complaint is dismissed.

IV. Conclusion

For the reasons stated above, defendant's motion to dismiss is GRANTED with respect to Count I of the complaint.

Defendant's request to dismiss the complaint in its entirety is denied because the motion to dismiss failed to address Count II of the complaint regarding reformation of the contract.