No. 21,149.

NELLIE BOYD EVANS, *Appellee*, V. THE WOODMEN ACCIDENT
ASSOCIATION, *Appellant*.

### SYLLABUS BY THE COURT.

1. ACCIDENT INSURANCE—*School Teacher—Injury from Cutting Down
   Tree—No Change of Occupation.* A clause in an accident insurance
   contract provided that if the insured was injured "while engaged
   temporarily or otherwise, in any occupation, work, risk or exposure
   classified by this Association as more hazardous than that under
   which this certificate is issued, or while doing any part of the work
   of any one so classified, I or my beneficiary shall be entitled only to the
   benefits provided by this Association in its classified tables for such in-
   creased hazard," and the insured, who had been in charge of city
   schools for years and was classified in the certificate as superintendent
   of a city school, was accidentally killed while cutting down a tree,
   about six months after the end of the term of school, in order to ob-
   tain firewood for his father. Occasionally, while teaching and in
   vacations, he did some work on his farm near the school and some
   chores for his father. In a contest as to the extent of the benefits
   due, it is held that the clause quoted applies to occupations rather
   than to casual or incidental acts which might pertain to occupations
   other than those named in the certificate, and that, under the testi-
   mony in the case, the jury was justified in finding that the insured
   had not changed his occupation, and that the work he was doing when
   he was killed pertained as much to that of a teacher as to that of
   a farmer.

2. SAME—*Policy Obscure—Proper Construction.* The general rule is
   that if the terms of an accident policy are obscure or open to more
   than one construction, that one which is more favorable to the insured
   must prevail.

Appeal from Sedgwick district court, division No. 2;
THORNTON W. SARGENT, judge. Opinion filed March 9, 1918.
Affirmed.

*Chester I. Long, Austin M. Cowan*, and *James G. Martin*,
all of Wichita, for the appellant; *E. J. Hainer*, and *C. P. Craft*,
both of Lincoln, Neb., of counsel.

*George A. Neeley*, of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:   Nellie Boyd Evans recovered a judgment against the Woodmen Accident Association in the sum of $3,222, upon a certificate issued by the association to her husband, William E. Evans, now deceased.   The defendant appeals.

On May 26, 1913, when the certificate of membership in the association was issued to Evans, and for several years prior thereto, his profession was that of public-school teacher, and at the time of the issuance of the certificate he held the position of superintendent of public schools at Mulvane, Kan., and his occupation was so stated in his application for membership and in the certificate.   For several years prior to his death he was also the owner of a tract of farm land, and adjoining this tract was a small tract upon which his aged and infirm father lived alone.   The deceased lived in town, not far from his school, but it had been his custom, when not engaged in his regular duties as a teacher, to go to the farm and do some of the work there, mainly in the mornings and evenings; and aid his father in doing chores and in caring for the few head of stock kept on the farm.   It was provided that the application of the insured, the by-laws of the association, and the certificate issued should together constitute the whole contract between the parties. Among the provisions of the application was the following:

"I hereby agree that if I am accidentally injured, fatally or non-fatally, while engaged temporarily or otherwise, in any occupation, work, risk or exposure classified by this Association as more hazardous than that under which this certificate is issued, or while doing any part of the work of any one so classified, I or my beneficiary shall be entitled only to benefits provided by this Association in its classified tables for such increased hazard."

The classification of risks in force at the time the certificate was issued was as follows:

| "Occupation. | Risk. | Benefits. |
|---|---|---|
| "Teacher school, city | Select | $3,000 |
| Teacher school, country or village. | Ordinary | 1,500 |
| Farmer owner, truck raiser | Medium | 1,000 |
| Farmer owner, or renter | Medium | 1,000 |
| Farm laborer, hired hand. | Special | 800" |

In May, 1914, Evans' term as superintendent expired and he did not thereafter secure any employment or contract of employment as a teacher or superintendent of schools.   During the summer of 1914 he made a campaign for the office of county

treasurer and also spent some of his time working on the farm. After being defeated for that office at the general election in the fall, he spent considerable time working at the farm or overseeing others working there and in aiding his father. However, he did not depend upon the farm as a means of support for himself and family. After the election, efforts were made by him to obtain another position as teacher, and he considered an offer of a position in the town of Corbin, but it does not appear that he arranged to take that position. In connection with his work as a teacher, and up until the time of his death, he was a member of the county board which conducted examinations of teachers and graded their examination papers. Evans also received a certificate as a licensed normal teacher about the time his term as superintendent expired. He was killed on December 24, 1914, when a cottonwood tree upon his farm, which he was cutting down for fuel for his father, fell upon and crushed him. Among other findings, the jury found that deceased never changed his occupation after his term as superintendent expired; that his activities after June, 1914, consisted of being a member of the examining board, campaigning for the office of county treasurer, and taking his usual recreation on the farm; that the work he was doing when he was killed was connected with and related to the occupation of teacher, and did not pertain to that of a farmer.

The certificate provided for the payment to the beneficiary of $3,000 in case of death by external, violent, and accidental means, and it was conceded that Evans' death was so caused. Prior to this action and at the trial defendant made a tender of $1,000 to plaintiff, as the extent of its liability under the certificate. It is contended by defendant that the deceased was injured while temporarily engaged in the work of a farmer, and that he was doing part of the work of his father, a farmer, and, therefore, that plaintiff could not recover more than the amount allowed for such risks. It is clear that the occupation of the insured was that of school teacher. He had served as superintendent of the schools of Mulvane for seven years, and before that time had been engaged as teacher of the common schools of that city. The fact that during this period he had occasionally done some work on his farm and chores for his father, who was a retired farmer, did not operate as a

change of vocation nor make him a farmer, "temporarily or otherwise." His unsuccessful candidacy for an office during the vacation period cannot be interpreted as a change of occupation. There was testimony that the work done by him on the farm and for his father was his means of obtaining exercise and recreation, and the jury have found that there was no change of occupation, and that between the ending of the term of school and the time of his death in December of the same year the only work done by him was acting as a member of the examining board, an unsuccessful effort to be elected as county treasurer, and his usual recreation on the farm. Some time before his death some steps had, been taken by him to obtain another position as school teacher, and it is plain that he had not abandoned his calling. The things done by him upon the farm were casual, and might be said to be incidental to his work as a teacher. Clauses like the one in question, limiting the insurer's liability where the insured is injured while engaged in an occupation classified as more hazardous than that named in the certificate, are generally held to apply to occupations rather than to acts that are merely casual or incidental. The terms "work, risk or exposure" pertain to a classified occupation more hazardous than that under which the certificate is issued.

In *Wildey v. Sheppard,* 61 Kan. 351, 59 Pac. 651, it was held that one insured against accident as a barber and restaurant keeper, who was injured while hunting, might recover, although hunting might be classed as a more hazardous occupation. The hunting was treated as a matter of recreation incident to the daily life of the insured, and, not being for profit or hire, could not be regarded as even a temporary change of occupation. In that case there is a quotation with approval from *Union Mutual Accident Ass. v. Frohard,* 134 Ill. 228, in which it was said:

"The word 'occupation' . . . must be held to have reference to the vocation, profession, trade or calling which the assured is engaged in for hire or for profit, and not as precluding him from the performance of acts and duties which are simply incidents connected with the, daily life of men in any or all occupations, or from engaging in mere acts of exercise, diversion or recreation." (p. 234.)

Cutting down a tree was not the usual work of the insured, and may be said to be as incidental to school teaching as it would

be to farming and many other vocations. It is not easy to say what particular acts are properly incidental to one vocation and not to another. If an insured lawyer should occasionally cut down a dead tree in his orchard or yard, his acts could hardly be treated as a change of calling any more than the chopping down of a tree now and then by the Prime Minister Gladstone effected a change of his vocation. Occasional acts of that kind may be properly treated as incidental to almost any of the callings or occupations. The filial act of the insured in cutting wood for his father's use cannot be regarded as the act of a farmer, and, besides, his father had retired from the occupation of farming. It did not make him a farmer or woodchopper any more than to have carried his father's mail occasionally would have made the insured a mail carrier.

In *Stone's adm'rs v. United States Casualty Co.*, 34 N. J. Law, 371, the insured was classified in the policy as a school teacher, and, being temporarily out of employment, he caused two buildings to be erected for his own use, and while examining the work as it progressed he fell from the second story and was killed. The clause relating to a change of occupation or any exposure more hazardous than that named in the policy was held to apply to occupations and not individual acts, and it was said that it would be preposterous to affirm that because of the building of these two houses he thereby became a builder by profession. It was held that the jury were warranted in finding that the act of the assured which led to his death was not an act that was more appropriately incident to other occupations than it was to that of a teacher.

Although there is some conflict of authority, the general trend of the cases is that casual or incidental acts pertaining to another employment than that named do not constitute a change of employment within the meaning of clauses like that under consideration; neither do they operate as a forfeiture, or reduction of the amount of benefits. In a note in 7 A. & E. Ann. Cas. 568 many authorities are collected in support of the rule, which is stated as follows:

"In construing insurance policies which contain provisions for changes in the occupation of the insured, or which classify risks according to occupation, it is the general rule that to be engaged in a certain occupation or employment is not inconsistent with the incidental performance of

acts, either of service or pleasure, which do not come within the stated vocation of the insured, and that the doing of such acts does not operate to remove the insured from the vocation in which he is classed."

Later cases to the same effect are collected in Ann. Cas. 1916 B, 740. Another statement of the rule applicable where a forfeiture or reduction of benefit is claimed by reason of a change of occupation or of temporary or occasional acts and exposures pertaining to an occupation classed as more hazardous than that named in the policy, with a long list of supporting authorities, is set forth in L. R. A. 1915 D, 312. It is there said that—

"Clauses in accident policies providing for a forfeiture or reduction in the sum payable if the insured is injured or killed in any occupation or exposure classed as more hazardous than that under which he was classified have frequently been before the courts. There has been little difference of opinion as to the applicability and effect of such provisions as applied to cases where the insured was injured while performing an occasional act relating to a more hazardous occupation, it being generally held that the classification intended by such provisions is a classification of occupations, and not of particular acts or exposures, and that therefore the fact that the insured occasionally performs acts pertaining to a more hazardous occupation does not have the effect of forfeiting the policy or reducing the amount of recovery."

(See, also, Note in 24 L. R. A., n. s., 1174.)

A few cases taking a different view of such clauses, and giving them a strict interpretation as against the insured, may be found in these notes. The general rule is that if there is doubt as to the construction of such provisions, that which is most favorable to the insured must prevail. (*Casualty Co. v. Colvin,* 77 Kan. 561, 568, 95 Pac. 565; *Stone's adm'rs v. United States Casualty Co.,* supra.)

The instructions of which complaint is made follow closely the rule laid down in *Wildey v. Sheppard,* supra, and the other authorities which are herein cited and approved. We find no good ground for the claim that the verdict was given under the influence of passion and prejudice.

The judgment of the district court is affirmed.