[No. 23152. Department Two. August 12, 1931.]

Geo. H. Funk *et al., Appellants,* v. Inland Power & Light Company *et al., Respondents.*[1]

*Geo. H. Funk,* for appellants.

*M. M. Conner, John A. Laing,* and *Henry S. Gray,* for respondents.

Beals, J.—In their complaint, plaintiffs alleged their ownership of a quarter section of timber land in Clark county, upon which was growing timber of the value of sixteen thousand dollars; that their land lay close to the bank of the north fork of the Lewis river, which stream constituted the only practicable means of transporting the timber to market; that the river had been meandered by the government, and had, for over twenty-five years, been used as a public highway for the purpose of transporting timber products; that there was in existence a boom and driving company

[1]Reported in 1 P. (2d) 872.

holding a franchise authorizing it to drive logs down the Lewis river to its junction with the Columbia; that the defendant Inland Power & Light Company had procured from the state supervisor of hydraulics, under the "water code" of this state, permits authorizing it to appropriate and use, at all times, at a point on the river near Ariel postoffice (which is about seventeen miles below plaintiffs' property), the entire flow of the river for the purpose of generating electrical energy, and to erect, in connection with this appropriation, a dam two hundred feet in height across the river, thereby impounding and holding the waters thereof and forming a storage basin which will extend a distance of approximately twelve miles upstream from the dam, thus appropriating the entire flow of the river to the generation of electrical energy at defendant's plant; that the defendant above named (which will hereinafter be referred to as though it were the sole defendant in this action), through the defendant Phoenix Utility Co., its agent, was proceeding with the installation of its plant and the erection of the dam across the river; that the construction of the dam will render impracticable the driving of timber products down the river, and will result in the destruction of the plaintiffs' right to use the river as a public highway for the transportation of logs; and that because of the construction of the dam the value of plaintiffs' property will be practically destroyed.

Plaintiffs further alleged that defendant was installing its plant without having first lawfully acquired the right to damage their property, and prayed for an injunction restraining the further construction of the dam, and for other specific and general relief. On motion, the allegations in the complaint to the effect that there was in existence a corporation holding a franchise authorizing it to drive logs down the river, was

stricken, plaintiffs' application for a temporary restraining order was denied, and a general demurrer interposed by defendant to plaintiffs' complaint was sustained. Plaintiffs elected to stand upon their complaint, and the court thereupon entered judgment dismissing the action, from which plaintiffs appeal.

Appellants' complaint is well drawn, and presents clearly the issue of law as to whether or not a non-riparian owner of a tract of timber land can, by injunction, restrain the construction of a dam, being erected pursuant to proper governmental permits, upon a river which is the only highway along which his timber products can be carried to market, when the construction of the dam causes no direct physical damage to or invasion of his property, nor interferes in any way with his access to the stream.

The complaint does not allege that appellants have ever utilized the river, or that they were, at the time of the institution of the action, in process of cutting their timber, or that they were preparing to do so; appellants' contention being that, because they would at some future time find it necessary to use the river for carrying their timber to market, the construction of respondent's dam at a point on the river below their property will prevent the uninterrupted driving of their logs, and that such inevitable future inconvenience resulted in present damage to them within the constitutional prohibition against the taking or damaging of property without first compensating the owner, and in the diminution of the market value of their land in an amount equal to the entire present value thereof; and that, therefore, appellants are entitled to enjoin the construction of the dam until such time as their damages have been ascertained and paid in the manner provided by law.

In the case of *Funk v. Bartholet,* 157 Wash. 584, 289

Pac. 1018, this court decided questions raised by appellants on appeal from a judgment of the superior court dismissing appellants' appeal from an order of the supervisor of hydraulics granting permits, *inter alia*, authorizing the construction of the dam, and the impounding of the water, at Ariel. Reference is made to the opinion in the case cited for a more complete understanding of the issues raised in this action. It was held that appellants stated no ground which authorized the granting of judicial relief against the supervisor in connection with the granting of the permits to respondent, and the judgment of the superior court dismissing appellants' action, upon sustaining a demurrer to their complaint, was affirmed.

For the purposes of this appeal, we assume that the Lewis river and the north fork thereof constitute, to the full extent contended for by appellants, a public highway for the floatage of timber to market. Rem. Comp. Stat., § 8407; *Monroe Mill Co. v. Menzel,* 35 Wash. 487, 77 Pac. 813, 102 Am. St. 905, 70 L. R. A. 272. We also assume that appellants are entitled, under Rem. Comp. Stat., § 6747, to condemn a "way of necessity" to the river, and thereby gain access thereto for the purpose of making the same available to their timber.

Appellants base their claim upon that portion of article I, § 16, of our state constitution, which provides that

"No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner,"

and cite many authorities, including *State ex rel. Smith v. Superior Court,* 26 Wash. 278, 66 Pac. 385; *State ex rel. Burrows v. Superior Court,* 48 Wash. 277, 93 Pac. 423, 125 Am. St. 927, 17 L. R. A. (N. S.) 1005; *Jacobs v. Seattle,* 93 Wash. 171, 160 Pac. 299, L. R. A.

1917B 329; *Wong Kee Jun v. Seattle,* 143 Wash. 479, 255 Pac. 645, 52 A. L. R. 625; *In re Martha Lake Water Co., No. 1,* 152 Wash. 53, 277 Pac. 382; and *McCarthy v. Metropolitan Board of Works,* L. R. 7, English and Irish App. 243.

Upon the point that this court has held that the physical proximity of timber lands to a floatable river vests in the owner of such lands a property right incident thereto, by way of a right to use the river for floatage, which right falls within the purview of the section of our state constitution above quoted, appellants cite *State ex rel. South Fork Log Driving Co. v. Superior Court,* 102 Wash. 460, 173 Pac. 192; *Tacoma v. Olympia Door Co.,* 121 Wash. 404, 209 Pac. 836; and *Tacoma v. Hansen,* 121 Wash. 700, 209 Pac. 837.

These were all condemnation cases. The first came to this court on a writ of review, bringing here for consideration an order of necessity entered by the superior court in favor of the condemnor, Willapa Power Company, in a proceeding instituted by it for the purpose of condemning property and property rights owned by relators along or adjacent to the south fork of the Willapa river. A reading of the opinion of this court in the case of *State ex rel. South Fork Log Driving Co. v. Superior Court,* 94 Wash. 691, 163 Pac. 15, is conducive to a better understanding of the decision in the case cited. It is clear that, in so far as, by the improvement, any land was actually taken or damaged by flooding or other physical invasion, the owner was entitled to damages, but we do not find that the case is authority for appellants' contention that they are entitled, under the facts here shown, to have their damages ascertained in the manner provided by law before respondents may lawfully proceed to install the dam at Ariel. The question at issue was the legality

of the order of necessity, which, it was determined, was properly entered by the superior court.

In the case of *Tacoma v. Olympia Door Co., supra,* for a complete understanding of which reference should be had to the cases of *Tacoma v. Mason County Power Co.,* 121 Wash. 281, 209 Pac. 528, and *Tacoma v. State,* 121 Wash. 448, 209 Pac. 700, it appeared that the defendant, which was the owner of riparian timber lands along the north fork of the Skokomish river and below a dam which the city of Tacoma was proposing to erect on that stream for the purpose of generating hydro-electric power, had been granted a new trial after an award by the condemnation jury of nominal damages only. From the order granting a new trial the city appealed; in the course of the opinion, the court said:

"The construction of the hydro-electric generating plant involved the erection of the dam which would divert the waters of the north fork of the Skokomish river. The Olympia Door Company, the respondent, owned lands riparian to the river below where the dam would be constructed. Upon these lands was valuable timber, and in logging them the respondent would be able to use the river for the purpose of getting the logs to market if the river was a floatable stream.

"The issue is whether the river was floatable in its natural state in a commercial sense. If it was, the respondent would have the right to substantial damages. If not, only nominal damages. The evidence of the appellant was to the effect that the river was not floatable for timber products. The evidence of respondent, if believed by the jury, would sustain a finding that it was floatable."

The sole question presented to this court was whether or not the trial court, the evidence being conflicting, abused its discretion in granting the condemnee's motion for a new trial. It was held that no

abuse of discretion appeared, and the order granting the new trial was sustained.

In the case of *Tacoma v. Hansen, supra,* relied upon by appellant, appears the following opinion, per curiam:

"This is a companion case to the case of *Tacoma v. Olympia Door Co.,* 121 Wash. 404, 209 Pac. 836, and upon the authority of that case the judgment will be affirmed."

This was also an appeal by the city from an order granting a new trial on motion of the condemnee. Appellants state in their brief that, in the *Hansen* case, the land owned by the condemnee was, in fact, non-riparian and lay half a mile from the main stream of the Skokomish river, below the junction of the north and south forks; whereas the tract owned by the Olympia Door Company was riparian to the north fork of the river, the flow of which was entirely diverted by the dam. Assuming that the Hansen land was so situated, the situation presented by their claim is, in many respects, analogous to that of appellants. The per curiam opinion above quoted, however, is authority only for the facts therein stated, and adds nothing to the language contained in the companion case therein referred to. The sole question to be determined by this court was: Did the trial court abuse its discretion in granting the motions for new trials? Under these circumstances, the cases, although pertinent to the inquiry here presented, are not controlling. The facts stated by appellants were evidently not deemed important in deciding the questions presented in the *Hansen* case.

As was pointed out in the case of *Funk v. Bartholet, supra,* respondent's permits or licenses from the supervisor of hydraulics nowise authorize the respondent to take or damage appellants' property before com-

pensating them therefor, the question of whether or not respondent's improvement violated any of the appellants' rights being without the issues determined in the prior case and expressly reserved from the decision thereof, the permits granted by the supervisor of hydraulics being necessarily subject to existing rights. Rem. Comp. Stat., § 7351 *et seq.* The phrase "existing rights" has, however, no special or unusual significance, but refers only to such rights as exist under general laws.

As a general proposition, courts of equity are slow to intervene, particularly by way of the drastic remedy of injunction, where the damage complained of is doubtful, remote or speculative, and particularly in cases where the relief, if granted, will manifestly result in injury to the party enjoined in an amount greater than any damage which plaintiff can possibly suffer from the acts complained of.

In the case of *Sultan Water & Power Co. v. Weyerhauser Timber Co.*, 31 Wash. 558, 72 Pac. 114, there was presented a state of facts somewhat analogous to the situation here. The plaintiff instituted the proceedings to condemn a right-of-way one hundred feet in width across defendant's property for a ditch and flume, and also sought to condemn land for the erection of a dam across the Sultan river. The defendant owned considerable timber land in the vicinity, some riparian and some not, some contiguous and some separate tracts. The jury awarded the defendant the sum of fifty-five dollars, which, it was conceded, was an adequate award for the land taken and for damages to the remainder of the tract described in the petition for condemnation. The defendant appealed, complaining of rulings of the trial court limiting its evidence to the lands described in the petition. The judgment appealed from was reversed, this court holding that

the trial court erred in not receiving evidence offered by appellant concerning damages which it contended it would suffer in connection with certain of its land which this court held constituted one contiguous tract and part of the land described in the petition. Referring to other contentions urged by appellant, this court said:

"In regard to the other sections of land, the court, we think, properly rejected evidence as to damages thereto, because they are not adjacent to section 19, and are contiguous only by reason of the fact that section 17 has a common corner with section 19. Other sections likewise corner with each other at a common point. These lands are on the opposite side of the river from the lands through which the ditch and flume run, and are from one to five miles distant from the proposed improvement. If they shall be damaged at all, it is by reason of the dam across the Sultan river, which may become an obstruction to the logs floated down, and not by reason of the right of way condemned across other lands of appellant, or of any improvement upon appellant's lands. It is conceded in the case that respondent has a right to build the dam, and that one end of it only will rest upon the part of section 19 owned by appellant. Appellant also conceded that the river is navigable only for floating logs down stream. Whether the dam across the river will injure the lands of appellant located above it will depend upon whether or not it is an obstruction to such navigation. If the dam should be constructed or maintained in such manner as to prohibit navigation, then appellant, or any person injured thereby, may require the removal of such obstruction, and recover his damages. *Carl v. West Aberdeen Land & Imp. Co.*, 13 Wash. 616 (43 Pac. 890); Gould, Waters (3d ed.), sec. 110. If respondent has a right to build the dam across the river, if he proposed to do it in a lawful manner, so as not to prohibit navigation, and so that each end would rest on his own land, and no injury were done by reason of flooding upper lands, certainly no one

could complain. It would not be necessary, in such event, for respondent to litigate in advance any injury which might be claimed by upper proprietors by reason of the increased cost in navigating the river. The fact that respondent proposes to erect a dam with one end thereof upon a piece of appellant's land, which is being condemned for the purpose, does not require respondent to litigate in such condemnation proceedings damages which may be claimed by appellant, or others who may own lands above, for an obstruction to navigation of the river. The right to the navigation of the river is a right common to the public. It is not a part of the land of appellant, and not an incident or appurtenant thereto, and therefore appellant cannot recover for an obstruction to the navigation of the river until he has suffered an injury. The argument is made that on appellant's lands are large bodies of timber, which can be more cheaply taken to market down the Sultan river than any other way, and that the construction of this dam will add a dollar per thousand feet to the cost of marketing this timber, resulting in a loss of something like $80,000 to appellant. Conceding these facts to be true, they afford no reason for litigating that question of damages in this proceeding, because these damages do not flow from the taking or damaging of appellant's lands. They flow from the obstruction of a highway, which appellant and all others who will be damaged in the same way, if at all, are privileged to use. If appellant owned no lands, but was engaged in logging, buying, and floating logs down the Sultan river from above this dam to the market, it would be injured in the same way, and probably to the same extent, as it now claims it will be injured. Yet under such circumstances no one would claim that appellant would be a necessary, or even a proper, party to an action to condemn lands on which to build a dam across the river. Nor would it be necessary that damages be assessed and paid to appellant before respondent could build the dam. An adjudication of damages in this case will not be an adjudication of injuries which may arise in regard to the navigation of the river.''

Appellants seek to distinguish the case last cited, arguing that, as the dam referred to in that case was only twenty-five feet in height, and as it was proposed to take only sixty second-feet of water from the river, it should be assumed that it would be perfectly feasible to drive timber products, without injury thereto, over the dam. It is, of course, evident that the dam which it was proposed to erect across the Sultan river was a pigmy compared with the giant which respondent is erecting across the north fork of the Lewis river. The Sultan river case is, therefore, not controlling here, but we consider that the principles upon which the same was decided are sound, and should properly be applied to the questions here presented.

In certain cases involving the taking or damaging of land, the fact that the same enjoys access to a navigable river, or to a highway, or to a railroad, may be a proper element to be taken into consideration, but we find no authority which would authorize a holding that appellants have the right to enjoin the construction of respondent's dam, taking into consideration all facts disclosed by the record before us. The consequences of the laying down of such a rule of law would be so far-reaching that it is difficult, if not impossible, were it a profitable subject of inquiry, to imagine the situations in which such a decision would be cited as authority for the exercise, by courts of equity, of the extraordinary power of injunction.

Appellants' right to use the highway known as the Lewis river, for floatage, is a general right enjoyed by them in common with the public at large, although, of course, appellants, as owners of a tract of adjacent timber land, have a special interest, in that they will, in all reasonable probability, at some future time, desire to avail themselves of the facilities afforded by the flowing river, while the existence of the highway

is of little concern to the general public. This is, however, true of many highways which are used largely by those living on or near the same. The interest of appellants in the highway is no greater than that enjoyed by the owners of thousands of acres of land within the water shed of the river, and it is conceivable that, in this or a similar case, the owners of land lying without the water shed might also desire to use the river as their most convenient outlet.

If appellants are correct in the position which they take in this case, it is evident that no such plant as that being constructed by respondent may ever be installed, either by the state or a private party, because, as a prerequisite to the installation of such a dam, all the timber land for which the stream from which the power is to be obtained affords an outlet must be purchased or condemned. This, of course, states an extreme case, but it is strictly in accord with the allegations of appellants' complaint. While it is true that appellants are entitled to enforce their legal rights, no matter what the consequences may be, in such a proceeding as this a court of equity must carefully consider the entire situation, and will resort to the extraordinary remedy of injunction, where the consequences of the issuance of the writ will be so far-reaching as here, only where it clearly appears that such action is required by well-recognized principles of law.

We are convinced that appellants are not entitled, upon the allegations of their complaint, to equitable relief by way of injunction, and that the authorities cited by appellants do not require the granting of the relief for which appellants pray. Our conclusion is supported by the following authorities: *Eisenbach v. Hatfield,* 2 Wash. 236, 26 Pac. 539, 12 L. R. A. 632; *Wintermute v. Tacoma Light & Water Co.,* 3 Wash.

727, 29 Pac. 444; *Ferry-Leary Land Co. v. Holt & Jeffery,* 53 Wash. 584, 102 Pac. 445; *Sholin v. Skamania Boom Co.,* 56 Wash. 303, 105 Pac. 632, 28 L. R. A. (N. S.) 1053; *Bouckaert v. State Board of Land Commrs.,* 84 Wash. 356, 146 Pac. 848; *State v. American Fruit Growers,* 135 Wash. 156, 237 Pac. 498; *Spooner v. McConnell,* 22 Fed. Cas. 939; and *Miller v. Mayor of New York,* 109 U. S. 385.

As to whether or not appellants, at some future time, may be entitled to some relief, either in an action at law to recover from respondent damages because of some injury which it may appear appellants have suffered by reason of respondent's acts, or by way of some other proceeding, we express no opinion.

The portion of appellants' complaint stricken by the trial court on motion added nothing to appellants' complaint, and we hold that the ruling complained of was correct.

The judgment of the trial court was right, and the same is hereby affirmed.

TOLMAN, C. J., PARKER, and BEELER, JJ., concur.