No. 34,059

The Liberty Life Insurance Company, *Appellant,* v. Cora M. Guthrie, *Appellee.*

(84 P. 2d 891)

Opinion filed December 10, 1938.

*Otis S. Allen* and *George S. Allen,* both of Topeka, for the appellant.

*Walter T. Griffin,* of Marysville, *Charles L. Hunt* and *Frank C. Baldwin,* both of Concordia, for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was an action by the Liberty Life Insurance Company to cancel a life insurance policy which it had issued and delivered to one Robert Claude Guthrie. The defendant, Cora M. Guthrie, the wife of the deceased and sole beneficiary under the policy, answered and cross-petitioned for recovery on the policy. She prevailed, and plaintiff appealed. We shall refer to appellant as the insurer, and to the appellee as the beneficiary.

It is the insurer's contention the policy was void for the reason it was not delivered during the good health of the insured as required by the contract of insurance. Trial errors urged will receive our attention in the course of the opinion.

The following are the contentions of the beneficiary: *First,* a proper construction of the particular application here involved did not require delivery of the policy during the good health of the in-

sured, and no such requirement is contained in the policy itself; *second*, this is not an action by the insurer to be relieved from delivering the policy, but is an action to cancel the policy after delivery and a cross action by the beneficiary to recover on the delivered policy; *third*, the insured was in good health as that term is understood in the law, and *fourth*, the insurer waived the question of the good health of the insured, if good health at the time of the delivery was in fact a requirement under the contract. In reply the insurer contends its conduct did not constitute a waiver of the requirement of good health at the time of delivery.

It will serve to clarify the issues to say at the outset the insurer has at no time contended the insured in any manner misrepresented the condition of his health in the application. It relies upon the contract requirement relative to the condition of his health at the time the policy was delivered. The application, examination, and the medical report were made on June 26, 1935, and the premium for the first year was paid to the agent of the insurer on the same day by check. These were all received by the insurer at its Topeka office on June 27, and the check was cashed on July 1, 1935. The policy was delivered July 9, 1935. The insured died August 12, 1935.

The jury made findings of fact, including the question of the health of the insured on the date of the delivery of the policy. The special findings were approved by the trial court. Before we treat that part of the case it is necessary to consider the provisions of the contract pertaining to the good health of the insured on the date of the delivery of the policy. The policy, together with the application, if a copy thereof be endorsed upon or attached to the policy, constitute the entire contract of insurance. (G. S. 1935, 40-420 [2].) The policy contained the following provision:

"This insurance is granted in consideration of the application therefor, a copy of which is hereto attached and made a part of this contract and the payment in advance of one hundred and fifty-seven and 08/100 dollars on or before the 26th day of June, 1935, being the premium for one year's term insurance, and the legal reserve, if any, ending on the 26th day of June, 1936, and the payment in advance of a like amount on or before the 26th day of June in each policy year after the first until . . . death of the insured.

"This policy is issued and accepted subject to all the conditions, benefits and provisions printed or written by the company on the preceding pages which are hereby made a part of this contract."

The pertinent portion of the application provides:

"I hereby agree on behalf of myself and every person or corporation who may have or claim any interest in any insurance issued on this application:

. . . . The company shall incur no liability *under this application* until it has been received, approved and the policy issued and manually delivered to and received by me, and the full first premium stipulated in the policy has actually been paid to and accepted by the company during my lifetime and good health." (Italics inserted.)

As previously stated, it is the contention of the beneficiary that this provision in the application, under proper grammatical construction, does not require good health of the assured on the date the policy is delivered. She contends the insurer, in preparing its own policy, carefully chose the language and punctuation it desired and in so doing separated by a comma the provision requiring approval of the application and delivery of the policy from the provision requiring payment and acceptance of the premium during the insured's lifetime and good health. In support of the construction placed upon the above provision contained in the application, the beneficiary relies upon the following statement of the rule contained in 59 C. J. 985, to wit:

"By what is known as the doctrine of the 'last antecedent,' relative and qualified words, phrases, and clauses are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to or including others more remote."

Our attention is also directed to the rule as stated in 13 C. J. 534 and cases under note 61. The beneficiary insists that the insurer intended by this provision to require manual delivery of the policy before it incurred any liability *on the application,* and that as punctuated by the insurer the only requirement as to good health is that the first year's premium must actually be paid and accepted by the insurer during the good health of the insured. Moreover, the beneficiary contends this provision according to its own terms and conditions was intended to deal only with the question of liability *on the application before delivery of the policy.* She insists that intention is clear for the reason the application expressly reads, "The company shall incur no liability *under this application* until . . ." She urges this action is not an attempt by the insurer to be relieved from the necessity of delivering a policy by virtue of misrepresentations made by the insured in the application, nor is it an attempt by the beneficiary to recover on the application prior to the delivery of the policy, but that it is an action by the insurer to be relieved from its obligation under the policy and an action by the beneficiary to recover on that policy. She says the *policy itself* expressly provides when it shall become effective and that it does not

require the policy to be delivered during the good health of the insured. Subparagraph four of paragraph 19 provides:

"This *policy* shall not take effect until the first premium hereon shall have been actually paid *during the good health of the insured* and the risk approved by the company." (Italics inserted.)

It is not contended by the insurer the first premium was not paid during the good health of the insured nor that the application was not approved. The beneficiary insists the above provision of the policy is clearly in harmony with her interpretation of the provisions contained in the application. She further contends that if the interpretation of the insurer is adopted, as to the provision in the application, then the contract is definitely inconsistent or at least uncertain and ambiguous, and that in such event she must prevail.

We need not determine, in the instant case, whether the interpretation placed by the beneficiary on the terms and provisions contained in the application is a proper interpretation. Obviously the application could easily have been so worded as to have removed the question at issue entirely from the realm of uncertainty. It might have been made to read: "The policy shall not take effect until the first premium thereon shall have been paid, the application approved, and the policy delivered, *all* during the good health of the insured."

Had the application been so worded the intention of the insurer, as now urged, would at least have been clear. We are persuaded and therefore compelled to conclude the contract with reference to whether the insured must be in good health on the delivery of the policy, is, to say the least, uncertain and ambiguous. In 32 C. J. 1161 the rule is stated thus:

"Where the application is made a part of the contract, effect should be given, if possible, to both it and the policy, but, where their provisions are conflicting and cannot be reconciled, those in the policy will ordinarily control, although a provision in the application is sometimes held to prevail over an inconsistent provision in the policy, as where it is more favorable to insured."

The insurer prepared its own policy. It was its duty to make its meaning clear. Where it fails to do so, it, and not the insured, must suffer the consequences. In *Sebal v. Columbian Nat. Life Ins. Co.,* 144 Kan. 266, 58 P. 2d 1108, it was said:

"The insurer prepared the rider. If it resulted in ambiguity, inconsistency, or uncertainty, the policy must be construed in favor of the insured. (*Bank v. Insurance Co.,* 91 Kan. 18, 137 Pac. 78.) The law of insurance is that in

the construction of policies, if ambiguity or uncertainty exists, the construction must be against the insurer. (*Bank v. Colton,* 102 Kan. 365, 170 Pac. 992; *Evans v. Accident Association,* 102 Kan. 556, 171 Pac. 643; *Hoskin v. North American Accident Ins. Co.,* 123 Kan. 731, 256 Pac. 981; *Samson v. United States Fidelity & Guaranty Co.,* 131 Kan. 59, 289 Pac. 427.)" (p. 269.)

Obviously, in view of this conclusion it is unnecessary to consider the factual question of the good health of the insured on the delivery of the policy, or trial errors touching that point, or whether the insurer by its conduct waived the alleged requirement of good health of the insured at the time of delivery.

The judgment must be affirmed. It is so ordered.