No. 35,721

ROSE L. KENYON, *Appellant*, v. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, *Appellee*.

(146 P. 2d 650)

Opinion filed March 4, 1944.

*C. Glenn Morris,* of Topeka, argued the cause for the appellant.

*John F. Eberhardt,* of Wichita, argued the cause, and *Robert C. Foulston, George Siefkin, Samuel E. Bartlett, George B. Powers, Carl T. Smith* and *C. H. Morris,* all of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover on a policy of insurance and from an adverse judgment the plaintiff appeals.

In the trial court a jury was waived and the cause was submitted on plaintiff's petition and on stipulated facts. The defendant filed

no answer, but it was agreed that it denied liability generally. For present purposes it may be said that it was alleged in the petition that on March 5, 1926, Frank S. Kenyon, born September 6, 1889, procured from the defendant company a policy of insurance on his life for $2,000, the beneficiary being his wife, Rose L. Kenyon, the policy containing provisions for waiver of premium and for certain benefits in the event of insured's total disability before attaining the age of sixty years; that the annual premium was paid each year as the same fell due until March 5, 1938, when two extension agreements were made for cash considerations, the latter extending time of payment of the premium until August 5, 1938; that Kenyon on August 1, 1938, suffered a coronary thrombosis and collapsed, and was thereafter totally disabled until his death on April 14, 1939. Allegations concerning notice to the company and its denial of liability need not be detailed. Plaintiff alleged she was entitled to recover the sum of $2,000 (less a loan on the policy) disability benefits and interest thereon, or a total of $2,038.39 with interest from June 14, 1941, for which she prayed judgment.

The following is a summary of the stipulated facts. On March 5, 1926, the defendant issued a policy of life insurance to Frank S. Kenyon, the annual premium being $67.94. Details of the policy will be set forth later. Kenyon paid the initial and other premiums on March 5 of each year until 1938 when the time for payment of premium was twice extended under agreements of like form. Details of the second agreement will be later mentioned. On August 1, 1938, Kenyon suffered a coronary thrombosis; thereafter he was continuously rendered incapable of following a gainful occupation from August 1, 1938, until his death on April 14, 1939. About thirty days prior to August 5, 1938, a notice was mailed to the insured advising him that August 5, 1938, was the last day for payment of premium under the extension agreement and shortly prior to August 5, 1938, a second notice was sent. On the 9th or 12th of August, 1938, a son of the insured took the second notice to the office of the company's state agent in Topeka and advised the agent of the condition of his father and asked that disability benefits be granted and that payment be waived. The agent wrote the home office and advised it of the last above facts and later the home office wrote its agent and directed that he advise Kenyon and those interested that for reasons stated in its letter, to which reference will be made, disability benefits could not be granted to Kenyon. The son also consulted with the

state insurance department and copies of certain letters between it and the company were attached and will be mentioned later. About November 14, 1938, the company placed the policy upon extended term insurance for the amount of $1,635 after advising Kenyon's son that was the only thing which could be done under the terms of the policy.

So far as need be noted the policy of insurance, dated March 5, 1926, and showing age of insured to be 36 years, stated that the company would pay to Rose L. Kenyon, beneficiary, the sum of $2,000 upon receipt of proof of death of Frank S. Kenyon, the insured, or $4,000 if death resulted from accident, as defined, and if insured was totally and presumably permanently disabled before age 60 would pay him $20 per month during such disability, besides waiving premium payments, all upon the conditions set forth in section 3. The policy further stated it was issued in consideration of the payment of the first premium of $67.94 and of the payment to the company of $67.94 (of which $2 was the premium for double indemnity benefit and $7.98 the premium for disability benefits) on the fifth of March thereafter until death of the insured. Section 3 of the policy provided for benefits in event of total disability. Among other provisions therein, it was provided that if, while no premium was in default, the insured should furnish to the company due proof that he was totally and permanently disabled, the company would pay him a monthly income of $20 per month beginning upon receipt of due proof of disability while total and permanent disability continued, and would also after receipt of due proof, waive payment of each premium as it thereafter became due during such disability. The policy also bore a printed endorsement noted as "Supplementary Benefits" to section 3 and which contained two paragraphs. The first provided that if while no premium was in default the proof furnished was such as to entitle the insured to the benefits provided in section 3, and if due proof was also furnished that such disability had been continuous since its beginning, the company would begin the monthly income payments as of the end of the first completed month of such disability if earlier than the date of receipt of proof, instead of as of the date of receipt of such proof and would return any premium due after the beginning of such disability which had been paid during the continuance thereof. The second paragraph (which is specifically referred to in letters later mentioned) provided that if not later than six months after the due day of any

premium in default and provided no previously due premium was also in default, due proof was received by the company that the insured was totally and permanently disabled as defined in section 3 at the date when the premium in default fell due, and had since been continuously so disabled, the policy would be reinstated without evidence of insurability and the waiver of premium and disability benefits should be the same as if such default had not occurred.

As has been noted, two extension agreements were made, both of like form. The second covered the same period as the first but covered additional time. Owing to its importance here, we quote material parts:

"The undersigned hereby requests the Mutual Life Insurance Company of New York to extend the time for payment of the premium of $67.94 and of the policy loan interest of $13.02, both due on March 5, 1938 (herein called the 'due date'), for four months on payment of an extension fee of $16.50,.and agrees if such extension is granted (a) that if both said premium and said policy loan interest, with interest at five per cent on both from the end of the days of grace to the date of payment, be not paid on or before July 5, 1938 (herein called the 'end of the extension period'), or within thirty-one days thereafter, said policy shall thereupon cease, lapse and become void ·as of said due date, except as otherwise provided in the policy, . . . and (d) that said premium shall not be waived under any provision in this policy for waiver of premium in event of total and permanent disability unless said premium would have been waived or refunded if there had been no extension."

This agreement was dated at Topeka on June 4, 1938, and signed by Frank S. Kenyon. The extension was granted by the company on the same day.

We note also two of the letters incorporated as part of the stipulated facts. In a letter dated August 17, 1938, written by the company to the manager of its state office reference was made to receipt of information concerning Kenyon. The letter directed that the manager advise Kenyon that the terms of the disability clause are clear with respect to the conditions under which a claim shall be entertained. After quoting the second paragraph of the supplementary benefits heretofore mentioned, the letter continued:

"Inasmuch as this policy lapsed for non-payment of the premium due March 5, 1938 and extended to July 5, 1938 and proof was not received within the time required by the terms of the disability clause, the claim for disability benefits must be declined."

In response to a letter from the claim adjuster of the insurance department of this state, the company wrote a letter reviewing the

general facts and again directed attention to the second paragraph of the supplementary benefits and continued:

"The first notice of this claim was not received by the Company until August 12, 1938, or after the policy had lapsed. At that time we were informed that Mr. Kenyon had had a heart attack on August 1, 1938. From the foregoing it is apparent that the policy was not in full force and effect when notice was received by the Company and that Mr. Kenyon was not totally and permanently disabled on March 5, 1938 'at the date when such premium in default fell due.' "

"This Company stands ready at all times to fulfill its part of the policy contract and not withhold or deny the payment of any disability benefits to which a policyholder is justly entitled, but in view of the circumstances, as outlined above, the disability claim was declined."

Other parts of the stipulation will be mentioned later if the same is necessary to a discussion of matters considered.

The legal questions arising under the stipulated facts were presented to the trial court on oral argument and written brief and after consideration that court found that judgment should be entered for the defendant for costs and it was so adjudged, and this appeal of the plaintiff followed.

The gist of appellant's contention the trial court erred is that, by reason of the extension agreement, the policy in all its parts was in effect to and including August 5, 1938; that any construction of the extension agreement limiting benefits under the policy is void as being in violation of G. S. 1935, 40-416; that so construed the supplemental provisions of the policy required its reinstatement; and that proof of disability incurred August 1, 1938, could be given at any time within six months from August 5, 1938.

The statutes of this state prior to the enactment of the insurance code in 1927 (G. S. 1935, ch. 40) made no specific provision for certain inclusions in a policy of life insurance, nor any specific provision for subsequent or extension agreements like those here involved. Prior to the enactment of the above statute it was recognized that extension agreements could be made and, where not in contravention of other statutory requirements, were valid and binding. (See e. g. *Cunningham v. Insurance Co.*, 106 Kan. 631, 189 Pac. 158; and *Clover v. Bankers Life Insurance Co.*, 117 Kan. 683, 232 Pac. 1068.) We need not consider at length decisions dealing with situations under the law as it then obtained, for in 1927 the legislature adopted an insurance code which made provisions concerning insurance contracts and subsequent agreements. Under G. S. 1935, 40-420 (2) it was provided that each policy of life insurance shall

contain a provision that the policy together with the application, if a copy be endorsed upon or attached to the policy, shall constitute the entire contract. Although that statutory provision was enacted after the policy in question was issued, we note the policy contains the following provision: "This Policy and the application, copy of which is attached, constitute the entire contract." Standing alone the statutory provision noted would have precluded execution of subsequent agreements not made a part of the policy. Recognizing that such agreements had often been made for extension of time of payment of premiums, the legislature provided the circumstances and conditions under which such subsequent agreements could be made by G. S. 1935, 40-416, which reads:

"A life insurance company may enter into subsequent agreements in writing with the insured, which need not be attached to the policy, to extend the time for the payment of any premium, or part thereof, upon condition that failure to comply with the terms of such agreement shall lapse the policy as provided in said agreement. Subject to such lien as may be created to secure any indebtedness contracted by the insured in consideration of such extension, said agreement shall not impair any right existing under the policy."

The parties disagree as to the construction to be given the above statute and as to its application to the facts. As applied to the extension agreement before us, appellant contends the effect was to defer the time for payment of premium from March 5, 1938, to August 5, 1938; that until the last date the policy in all its parts remained in full force and effect; that any portion of the agreement limiting or attempting to limit coverage was void as being in contravention of the statute; that disability having occurred before August 5, 1938, she had six months to furnish proof by express provision of the policy. Appellee contends that premium not having been actually paid by August 5, 1938, all rights ceased as of March 5, 1938; that the company being under no obligation to extend time for payment of premium, could prescribe conditions for such extension, and in any event the agreement did not impair "any right existing under the policy."

In support of their contentions as to proper construction of G. S. 1935, 40-416, neither party cites any authority closely in point, appellee stating that its research had disclosed no like provision in the insurance statutes of other states. It does direct our attention to *Brown v. Illinois Bankers Life Assur. Co.*, 144 Kan. 670, 63 P. 2d 165, and quotes an excerpt from *Lincoln Nat. Life Ins. Co. v. Hammer*, 41 F. 2d 12, found therein, as well as to the later case

of *Mauck v. Great American Life Ins. Co.*, 150 Kan. 636, 95 P. 2d 325. Neither of the above cases dealt with the restrictive features of the last sentence of the statute, and they are in no sense decisive of the question presented by this appeal.

We need not labor the point that the company, not being under any contractual or statutory obligation to extend time for payment of a premium, could fix the conditions under which it would make such an agreement. Whatever may have been its right prior thereto, it is not open to argument but that its business in Kansas is subject to statutory regulation, and that such a regulation was made by the enactment of the above quoted statute, which expressly authorized the making of the subsequent agreement to extend the time for payment of the premium upon condition that failure to comply should lapse the policy as provided in the agreement, and provided further, however, that the agreement should not impair any right existing under the policy. There is no contention that the statute is not valid in all its parts.

An examination of the extension agreement and of the policy of insurance to which it referred, discloses first that it extends time of payment of the premium of $67.94. This was the total premium due on March 5, 1938, and included not only the premium for the straight life insurance, but the separately stated premiums for double indemnity benefits and for disability benefits—or in other words, payment of premium for all benefits under the policy was extended. The extension was made for a paid consideration totaling $16.50, and was on condition that if the payment, with stipulated interest, was not made by August 5, 1938, (July 5 plus 31 days thereafter) the policy should lapse and become void as of the due date (stated as March 5, 1938) "except as otherwise provided in the policy." Giving to the remaining portion (d) of the agreement as quoted above, the construction most favorable to the contentions of the appellee, it is that there was no waiver of payment of premium for total and permanent disability, unless the payment would have been waived or refunded if there had been no extension; or stated more objectively, unless the total and permanent disability was incurred prior to March 5, 1938, and proof thereof made prior to March 5, 1938, or, under another provision, in six months there was no liability.

We note that the above agreement presents the anomalous situation of the company's granting, for a consideration, a period of time

to pay premium for disability benefits, and at the same time saying that during the extension period there are no benefits for disability incurred during that period.

The first portion of the agreement provides that if payment is not made by August 5, 1938, the policy "shall thereupon lapse and become void as of said due date, except as otherwise provided in the policy." If the agreement is so interpreted that "due date" means March 5, 1938, (as at least inferentially stated) and not August 5, 1938, which was the last day a payment could be made, may it be said the provision impaired a "right existing under the policy" and further may it be said that subdivision (d) limiting disability benefits, impairs such rights?

The primary question is the construction to be placed on the clause "said agreement shall not impair any right existing under the policy." Appellee contends that the phrase "right existing" means an accrued right such as the insured's right to receive cash surrender values, if any, or to take extended paid-up insurance, and that he had only such accrued rights as he had paid for at the time the extension agreement was made, but it cites no authority in support. Standard dictionaries indicate that a right may be said to have accrued only when it has come into existence as an enforceable claim. It would follow if appellee's contention were correct, that in the absence of provision therefor in an extension agreement, the beneficiary would not be entitled to the proceeds of the policy if the insured died during the extension period because her right thereto would not have accrued as of the time the extension agreement was made. The phrase "rights existing" is in effect the same as "existing rights" which has been said to have no special or unusual significance, but refers only to such rights as exist under general laws. (See *Funk v. Inland Power & Light Co.*, 164 Wash. 110, 1 P. 2d 872.) It has been held that valid contracts issued under the War Risk Insurance Act of the United States are property and the rights of individuals arising under them are protected by the Fifth Amendment. (*Lynch v. United States*, 292 U. S. 571, 78 L. Ed. 1434, 54 S. Ct. 840.) Without isolating the words "rights existing," but considering the entire clause of which they are part, we note, as has been stated heretofore, that under the statute the policy and application constitute the contract, and the clause in question may well be read as though it were, "said agreement shall not impair the contract." Anything in the extension agreement which renders the

contract less valuable impairs it. (12 Am. Jur. 20.) In our opinion the legislature meant to provide that if a subsequent agreement were made extending time for payment of premiums, the agreement could contain a condition that failure to pay the premiums should lapse the policy but that it could not contain terms restricting the right to benefits under the policy, or otherwise stated, during the period of extension the rights under the policy continued unabated and undiminished. In accordance with the above, we hold that the attempt by the extension agreement to limit the coverage for total and permanent disability was contrary to statute, void and of no effect.

We note appellee's contentions that nothing short of actual payment of the premium within the extension period could prevent lapse of the policy, and that the reinstatement provisions of the policy are inapplicable to the instant case. These contentions are predicated on the proposition the appellee, by subsequent agreement, could limit the coverage of the policy. In view of what has been said, we need not separately discuss these contentions further.

Some argument is also made by appellee that the extension agreement fixed due date of the premium as March 5, 1938, and provided that failure to pay the premium within the extended period caused the policy to lapse as of that date. It is true that the due date of the premium, as fixed in the policy, was on March 5 of each year, and therefore that the premium due March 5, 1938, might be said to have been in default after that date, even though days of grace were provided in the policy. But here the extension agreement, executed for consideration, definitely fixed a new period in which the premium could be paid and that was "on or before July 5, 1938 . . . or within thirty-one days thereafter." In sum, it gave the insured until August 5, 1938, in which to pay the premium. Of course during all of this time the premium remained unpaid, it could have been said to be due, but it is not to be denied that the insured did not have to pay until the last day. In ordinary parlance that was the due date. Appellee's argument not only depends on the due date being March 5, 1938, but it ignores the language of the extension agreement that the lapse for nonpayment shall be "except as otherwise provided in the policy."

The provisions of the policy for disability benefits are conditioned upon disability occurring while no premium is in default. Although decisions may be found where the word "default" has been variously

applied, ordinarily it may not be said that one required to perform a duty within a stipulated period is in default before the expiration of the time fixed. As applied to the facts of this case, the premium was not in default until after August 5, 1938. An examination of the policy discloses that under section 3 it was provided that if while no premium was in default the insured should furnish to the company due proof he was totally and permanently disabled, he would be entitled to the stipulated benefits and the company would waive payment of each premium as it thereafter became due. Under the first part of the "Supplementary Benefits," it was provided, in effect, that under circumstances noted above the appellee would begin the payment of benefits at an earlier period and would return any premium paid during the period of disability. As has been noted, insured became totally disabled August 1, 1938, the premium lapsed after August 5 and the appellee had the equivalent of proof on August 12, 1938. Were the two policy provisions the only ones before us we would have to consider whether the furnishing of the proof was a condition precedent to fixing the appellee's liability, but we need not decide that for the second part of the "Supplementary Benefits" expressly provided that if not later than six months after the due date of any premium in default, due proof was received by the appellee that the insured was totally and permanently disabled at the date when the premium fell due, the policy would be reinstated and waiver of premium and disability benefits would be the same as if the default had not occurred. That provision applies here—the disability occurred before the premium was in default, and proof sufficient was furnished the appellee which, under date of August 17, 1938, wrote its agent to advise Kenyon that it denied liability for disability benefits, and which under date of August 30, 1938, wrote the claim adjuster of the state insurance department it had notice of the claim on August 12, 1938, and that the disability claim was declined. It may be said, however, that no claim is now made that the appellee is not liable because due proof was never made. Even though such a claim were asserted, in view of its letters, it could not be sustained.

As we understand the entire appeal, there is no contention but that if appellant is entitled to recover sums due for her husband's total and permanent disability during his life, she is likewise entitled to recover the death benefits under the policy, concerning the amount of all of which there seems to be no controversy.

The judgment of the trial court in favor of the appellee is reversed and set aside and the cause is remanded to the district court with instructions to render judgment in favor of the appellant as prayed for in her petition.