## MUTUAL LIFE INS. CO. OF NEW YORK v. WEIGEL.

### No. 4312.

United States Court of Appeals
Tenth Circuit.
June 9, 1952.

Pickett, Circuit Judge, dissented.

John F. Eberhardt, Wichita, Kan. (George Siefkin, George B. Powers, Samuel E. Bartlett, Carl T. Smith, Stuart R. Carter and Robert C. Foulston, Jr., Wichita, Kan., on the brief), for appellant.

Clarence J. Malone, Topeka, Kan., (James Malone, Topeka, Kan., on the brief), for appellee.

Before BRATTON, HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

Appellee, Mary Weigel, brought this action to recover on an insurance policy issued to her deceased husband. The defense to the action was that the policy had lapsed for nonpayment of premium.

The facts are not in dispute and are substantially these. The policy, as issued, provided for payment of an annual premium on September 20th of each year. It recited that the annual premium for the year, ending September 20, 1946, had been paid. It contained the usual provision for a thirty-one day grace period for the payment of each premium subsequent to the first. It provided that if any premium was not paid before the end of the grace period the policy would immediately terminate and have no value and that all previously paid premiums would be retained by the company, except as otherwise provided in the policy. Apparently about the time the second annual premium became due, the insured found himself unable to pay it in full, because about October 15, 1946, during the grace period, he sent the company a check for $22.92 and requested a change in method of premium payments and forwarded the policy to the company, in order that it would be available for making the necessary change. The company cashed the check and issued a receipt therefor. It returned the policy to the insured by O. J. Brown, its agent, with a letter from Brown, stating that the policy was not needed and that the insured was to sign the enclosed form and return it to the company and stating that "your monthly premium will be $23 a month you can get it back to annual payments when you want to." The insured signed and returned the form, but called attention to the fact that while the change was to be to monthly payments the form called for quarterly payments. The company acknowledged the error and sent him a new form prepared by the company for his signature. The new form which had written into the blank spaces the italicized word "monthly" read as follows:

"Change in Method of Premium Payments to the Mutual Life Insurance Company of New York:
"The undersigned requests the Company to change the method of payment of premiums on Contract No. 6008695 on the life of Joseph Weigel to the following: *monthly* annual premiums which will fall due on the 20th day of each month in each year commencing with the premium due on Sept. 20, 1946. Each *monthly* annual premium due prior to the third anniversary date shall be $23.00 and each monthly premium due on and after such anniversary date shall be $26.90.

"Dated at Ellis, State of Kas. This 23 day of Oct. 1946.

. . . . . . . . . . . . . . . . .

Signature of Assignee, Applicant, or Beneficiary (if paying premium)
                              Joseph Weigel,
    Signature of Insured-Annuitant.
    (To be forwarded to the Home Office Policyholders Service Division with Form 4208 if required)"

The form was signed by the insured and returned to the company.

Six monthly payments were made. The last payment made covered the amount due February 20, 1947. It was paid by check dated March 22, 1947. The receipt acknowledging this payment was dated March 26, 1947. No payment was made thereafter. The insured was struck by an automobile and died on April 29, 1947.

It is urged that the supplemental agreement set out above converted the policy from an annual premium payment policy, as originally written, to a monthly premium payment policy; that the monthly payment due March 20, 1947 was not paid; that the grace period for its payment expired on April 20, 1947 and, since it was not paid, the policy was not in force and effect at the date of the insured's death. The trial court rejected this contention. It concluded that the policy remained an annual premium payment policy and that the subsequent supplemental agreement merely gave the insured the privilege of paying the annual premium in monthly instalments.

Section 40–410, General Statutes of Kansas 1949, provides that it shall be unlawful for any life insurance company, other than fraternal, to forfeit or cancel any life insurance policy on account of nonpayment

of such premium or instalment, within six months after default of payment of any premium or instalment thereof, without first giving notice in writing to the insured of its intention to forfeit or cancel the same, but it further provides that the Section shall not apply to any policy under the terms of which the premium is to be paid weekly, bi-weekly, or monthly, and under which a grace period of at least four weeks is granted for payment of every premium after the first, during such time the insurance shall continue in force.

Section 40-411 so far as material provides that before any cancellation or forfeiture can be made for the nonpayment of premium the insurance company shall notify the insured that the premium thereon, stating the amount thereof, is due and unpaid and of its intention to forfeit or cancel the policy; that the insured shall have the right at any time within thirty days after such notice, given as provided therein, to pay the premium and that any attempt within six months after default of the payment of any premium to cancel or forfeit such policy without the notice therein provided shall be null and void.

Under Section 40-416, a subsequent agreement, extending the time for payment of any premium, may contain a provision that failure to comply with its terms shall lapse the policy as provided in the agreement.[1] Failure to comply with a subsequent agreement containing such a provision lapses the policy.[2] But the subsequent agreement in this case did not contain such a provision. It is conceded that no cancellation notice, as required by Section 40-410 and 411, was given. It thus follows that if the supplemental agreement did not convert the annual premium policy into a monthly premium policy that the policy was in force at the time of the death of the insured.

Section 40-420 provides that, except as otherwise expressly provided, the policy together with the application, if attached thereto, shall constitute the entire contract. We may take judicial knowledge that when a change in an insurance contract is requested, it is a common practice to require that the policy be returned to the company so that the change can be endorsed thereon or attached thereto. It is of some significance that when the policy was sent to the company it was returned with the statement that it was not needed for the purpose of granting the privilege of making monthly payments. So also is significant the statement in the agent's letter, advising that the insured could "get it back to annual payments when you want to." We think all this lends support to the trial court's conclusion that the policy remained an annual premium payment policy and that the supplemental agreement merely gave the insured the privilege of paying this premium in monthly instalments.

We think this view is further supported by the supplemental agreement itself. Nowhere does it refer to a modification or change of the original contract. Nothing is said in the heading, or title, or in the body of the agreement to the effect that the policy was changed from an annual premium to a monthly premium policy. In two separate places in the body of the agreement, it speaks of *monthly annual*[3] premiums. The use of the word "annual" is inconsistent with the contention that the parties intended to modify the original policy and change it from an annual premium policy to a monthly premium policy. To hold that the policy was by the supplemental agreement converted into a monthly premium policy requires that the word "annual" be disregarded as mere surplusage and having no intended meaning.

In construing a written instrument, consideration, force, and effect must, if

1. Mauck v. Great American Life Insurance Co., 150 Kan. 636, 95 P.2d 325; Kenyon v. Mutual Life Insurance Co. of New York, 158 Kan. 150, 146 P.2d 650, 152 A.L.R. 375.

2. Mauck v. Great American Life Insurance

ance Co., 150 Kan. 636, 95 P.2d 325; Brown v. Illinois Bankers Life Assur. Co., 144 Kan. 670, 63 P.2d 165; Hildyard v. Mutual Life Ins. Co., 145 Kan. 197, 64 P.2d 7.

3. Emphasis supplied.

possible, be given to all parts thereof.[4] The presumption must be that all the language of the agreement was advisedly used by the parties thereto. The most that can be said with respect to this instrument is that it is ambiguous and lacks clarity. As pointed out, in two instances it speaks of monthly annual premiums. After the second reference to monthly annual premiums, it speaks of monthly premiums due after the third anniversary date of the policy. Obviously, the meaning of "monthly annual premiums" and of "monthly premiums" is not the same. One view is that the agreement effected a substantial change in the policy by converting it from an annual premium policy to a monthly premium policy. Such a view would be less favorable to the insured, in that he would not be entitled to notice of intent to cancel for nonpayment of premiums. (See Section 40-410.) Another view is that the parties intended that the insured should have the privilege of paying the annual premiums in monthly instalments until he could resume annual payments thereof. Under this construction, all the agreement did was to grant to the insured an extension of time in which the annual premium could be paid and give him the right to pay the same in monthly instalments. Under such a construction, notice of intent to cancel for nonpayment of premium was required.

The supplemental agreement was prepared by the company. If there is ambiguity in its provisions, and we hold there is, the construction most favorable to the insured will be adopted.[5]

Furthermore, prior to the new arrangement, the insurance company could not cancel the policy within six months after nonpayment of premium, without first giving notice in writing. That gave the insured a valuable right. While Section 40-416 authorizes an insurance company to enter into subsequent agreements, extending the time for payment of premiums, which need not be attached to the policy, upon the condition that failure to comply with the terms of the agreement shall lapse the policy, as provided in the agreement, it expressly provides that the agreement shall not impair any right existing under the policy. In the absence of any provision in the agreement that failure to comply with such agreement should lapse the policy, as provided therein, the valuable right to the insured under Section 40-410 to be protected against cancellation of the policy within six months after nonpayment of premium without notice continued "unabated and undiminished."[6] Appellant's contention that Section 40-416 protects only contractual rights and has no application to rights founded upon the statute is not well taken. It is too well settled to require much discussion that a mandatory statutory right is as much a part of the insurance contract as though written therein.[7]

Affirmed.

PICKETT, Circuit Judge (dissenting).

The policy in this case when issued provided that the premium should be paid annually. For the first two years the annual premium was $259.80. Beginning the third year it was to increase to $303.90. Prior to the time that the second annual premium was due, the insured advised the company that he desired to pay the premiums on a monthly basis. He was advised that this could be done and executed the regular company form requesting such change. It read as follows:

4. Romesburg v. Federal Life Ins. Co., 147 Kan. 378, 76 P.2d 829; Sheets v. Farmers' & Merchants' Mutual Life & Casualty Ass'n, 116 Kan. 356, 225 P. 929.

5. Liberty Life Ins. Co. v. Guthrie, 148 Kan. 907, 84 P.2d 891; Citizens' State Bank v. Shawnee Fire Ins. Co., 91 Kan. 18, 137 P. 78, 49 L.R.A.,N.S., 972; Delaware State Bank v. Colton, 102 Kan. 365, 170 P. 992; Evans v. Woodmen Accident Ass'n, 102 Kan 556, 171 P. 643,

L.R.A.1918D, 122; Hoskins v. North American Accident Insurance Co., 123 Kan. 731, 256 P. 981; Samson v. United States Fidelity & Guaranty Co., 131 Kan. 59, 289 P. 427.

6. Kenyon v. Mutual Life Insurance Co. of New York, 158 Kan. 150, 146 P.2d 650.

7. Shelton v. United Life & Accident Insurance Co., 150 Kan. 851, 96 P.2d 675, and cases therein cited.

660

"Change in Method of Premium Payments .to the Mutual Life Insurance Company of New York:

"The undersigned requests the Company to change the method of payment of premiums on Contract No. 6008695 on the life of Joseph Weigel to the following: monthly annual premiums which will fall due on the 20th day of each month in each year commencing with the premium due on Sept. 20, 1946 Each monthly annual premium due prior to the third anniversary date shall be $23.00 and each monthly premium due on and after such anniversary date shall be $26.90.

"Dated at Ellis, State of Kas. This 23 day of Oct. 1946.

"Signature of Assignee, Applicant or Beneficiary (if paying premium)

"JOSEPH WEIGEL,

"Signature of Insured-Annuitant."

The right to change the method of paying premiums is recognized by substantially all insurance companies. When that change is made it becomes part of the contract and the insured is bound to pay it in the same manner as though it had been in the original policy. The policy here provided that "a grace period of thirty-one days will be granted for the payment of each premium after the first, during which days of grace this policy will continue in force. If any premium is not paid before the end of the days of grace, this policy shall immediately terminate and have no value, and all premiums previously paid shall belong to the company, except as provided for in this policy." The premium due on March 20, 1947, was not paid within the thirty-one days grace. If the premium payments were on an annual basis the policy could not be forfeited within six months without written notice. This is not a requirement if the premium was on a monthly basis. G.S.Kan.1949, Sec. 40–410. I do not think the record supports the finding of the trial court that the subsequent arrangement for monthly payments was merely an extension agreement for the payment of the annual premium and notice of forfeiture was necessary. The executed request for change provides a method for payment throughout the life of the policy unless, of course, it should be changed by another application which the insured was advised he might do. The provision for change to monthly payments is clear and unambiguous and a strained construction should not be placed upon it. "Insurance companies can only survive by the prompt payment of premiums," Wolford v. National Life Ins. Co., 114 Kan. 411, 219 P. 263, 264, 32 A.L.R. 1248; Minnesota Mutual Life Insurance Co. v. Cost, 10 Cir., 72 F. 2d 519.

I would reverse the judgment.